## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MURPHY, STANLEY MEYER, | ) | |
| J.D. LINDEMEIER, KEENON SMITH, | ) | |
| JASEN GUSTAFSEN, ALFRED AUKEMA, | ) | |
| and KEVIN TUCEK, individually and | ) | No. 16 C 11471 |
| on behalf of all others similarly situated, | ) | |
| | ) | Judge |
| Plaintiffs, | ) | Magistrate Judge |
| | ) | |
| v. | ) | |
| | ) | |
| LISA MADIGAN, in her official capacity as | ) | |
| attorney general of the State of Illinois, and | ) | |
| JOHN BALDWIN, in his official capacity as | ) | |
| the Director of the Illinois Department of | ) | |
| Corrections, | ) | |
| | ) | **Jury Demand** |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT AND OTHER INJUNCTIVE RELIEF

Plaintiffs Paul Murphy, Stanley Meyer, J.D. Lindemeier, Keenon Smith, Jasen Gustafsen, Alfred Aukema, and Kevin Tucek, individually and on behalf of all others similarly situated, through their undersigned counsel, complain against the Defendants, Lisa Madigan, attorney general of Illinois; and John Baldwin, director of the Illinois Department of Corrections, as follows:

### Nature of the Case

1.      This case, which arises under 42 U.S.C. § 1983, challenges the constitutionality of a legal scheme whereby individuals who have been convicted of certain sex-related crimes end up serving life sentences behind prison bars as the result of the interactions of various state laws and state agency regulations

promulgated by three distinct entities—the Illinois legislature, the Prison Review Board ("PRB"), and the Illinois Department of Corrections ("IDOC"). In particular, individuals convicted of sex-related crimes who are sentenced to three years to life of mandatory supervised release ("MSR") find themselves stuck in prison for life as a result of the imposition of unmeetable restrictions on where they can live that must be satisfied in order for such individuals to be released on MSR. The challenged scheme results in what amounts to a Kafkaesque nightmare whereby these individuals are denied any semblance of proportionality in their prison sentences and due process of law.

2.      This is an action for declaratory and injunctive relief. Plaintiffs, individually and on behalf of the classes they seek to represent, allege violations of their rights under the Eighth and Fourteenth Amendment of the United States Constitution.

3.      As of the filing of this complaint, there are approximately 4,000 people imprisoned in the Illinois Department of Corrections who have been convicted of sex-related offenses for which state law imposes an indeterminate term of "three years to life" of Mandatory Supervised Release ("MSR") (formerly known as parole).

4.      As set forth below, Illinois laws severely restrict where individuals deemed sex offenders may live while on MSR. As a result, the vast majority of such prisoners are unable to find approved "host sites" at which to serve their MSR terms. Because of the unavailability of compliant housing, such prisoners are detained in the Illinois Department of Corrections long after they have served the

term of imprisonment to which they have been sentenced. For individuals with indeterminate MSR sentences, their prison terms are in effect converted to sentences of lifetime imprisonment without any possibility of release.

5. The named Plaintiffs are individuals currently being held in the custody of the Illinois Department of Corrections who have been sentenced to serve "three years to life" MSR terms and are unable to find "host sites." Plaintiffs, individually and on behalf of two classes of similarly situated individuals (identified below), challenge the constitutionality of the statutory schemes that cause this severe deprivation of their constitutional right to liberty.

## Jurisdiction and Venue

6. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## The Parties

8. Defendant Attorney General Lisa Madigan is sued in her official capacity as the Attorney General of the State of Illinois. The Attorney General of the State of Illinois is responsible for executing and administering the laws of the State of Illinois and is charged with advising state's attorneys throughout the state.

9. Under Illinois law, Defendant Madigan has the authority to participate in and assist with criminal prosecutions, including charges under the statutes challenged herein. Defendant Madigan also has the authority to consult with and

advise Illinois State's Attorneys concerning criminal prosecutions. (See 15 ILCS 205/4).

10.     Defendant Madigan has been and continues to be directly involved in the enforcement of the statutory schemes at issue in this case by defending the statutes in state court criminal appeals.

11.     Defendant John Baldwin is sued in his official capacity as director of the Illinois Department of Corrections. In his capacity as the director of IDOC, he has final authority to set the Department of Corrections' policies and practices with regard to approval of prisoners' "host sites" for MSR.

12.     Plaintiff Paul F. Murphy is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He has completed his three-year prison term. The PRB approved Murphy for release on MSR on March 3, 2014. To date, the IDOC has not released Murphy from prison because he cannot find an approved "host site" at which to serve his MSR. Murphy has no money to pay for housing and no family members outside of prison who could help him pay for housing. The state of Illinois provides no transitional housing for sex offenders who cannot afford their own housing while on MSR. IDOC will not release a homeless individual on MSR. Because his MSR term is indefinite, Murphy remains in Taylorville Correctional Center with no foreseeable possibility of release.

13.     Plaintiff Stanley Meyer is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He has completed his four-year prison term. The PRB approved Meyer for release on MSR on May 12, 2011. To

4

date, the IDOC has not released Meyer from prison because he cannot find an approved "host site" at which to serve his MSR. Meyer has no money to pay for housing and no family members outside of prison who could help him pay for housing. Because his MSR term is indefinite, Meyer remains in Taylorville Correctional Center with no foreseeable possibility of release.

14.     Plaintiff J.D. Lindenmeier is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He has completed his six-year prison term. The PRB approved Lindenmeier for release on MSR on July 18, 2011. To date, the IDOC has not released Lindenmeier from prison because he cannot find an approved "host site" at which to serve his MSR. As set forth below, Lindenmeier's family members have made substantial efforts to find a "host site" that will meet IDOC's approval. Lindenmeier has proposed six different host sites with various family members who are willing to take him in and assist in his successful compliance with MSR terms and reintegration into society. IDOC has rejected all of these proposed sites. Lindenmeier has no other options. Because his MSR term is indefinite, Lindenmeier remains in Taylorville Correctional Center with no foreseeable possibility of release.

15.     Plaintiff Keenon Smith is a prisoner at Pickneyville Correctional Center in Pickneyville, Illinois, and a registered sex offender. He has completed his five-year prison term. The PRB approved Smith for release on MSR on November 4, 2016. To date, the IDOC has not released Smith from prison because he cannot find an approved "host site" at which to serve his MSR. As set forth below, Smith's

5

mother has made substantial efforts to find a "host site" that will meet IDOC's approval, but to no avail. Smith's mother is an elementary school teacher. She is willing to take Smith into her home or pay for his housing elsewhere. Smith's mother has proposed at least 12 different host sites in Chicago and the suburbs. IDOC has rejected all of these proposed sites. Because his MSR term is indefinite, Smith remains in Pickneyville Correctional Center with no foreseeable possibility of release.

16.     Plaintiff Jasen Gustafsen is a prisoner at Lincoln Correctional Center in Lincoln, Illinois, and a registered sex offender. He is has completed his four-year prison term. The PRB approved Gustafsen for release on MSR on October 19, 2014. To date, the IDOC has not released Gustafsen from prison because he cannot find an approved "host site" at which to serve his MSR. As set forth below, Gustafsen has no financial resources of his own and no family members who are able to pay for his housing outside of prison. His only options for housing outside of prison are staying with his mother or his aunt. Gustafson has proposed his mother's and aunt's residences as "host sites." IDOC has rejected both of these proposed sites. Because his MSR term is indefinite, Gustafson remains in Lincoln Correctional Center with no foreseeable possibility of release.

17.     Plaintiff Alfred Aukema is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He is scheduled to complete his five-year prison sentence on September 7, 2017. Plaintiff Aukema has no financial resources to afford to pay for a "host site" and no friends or family

outside of prison who can take him in or pay for his housing. Because his MSR term is indefinite, Aukema faces a likelihood of lifetime imprisonment due to the lack of available compliant housing and his inability to afford housing, if it were available, outside of prison.

18.     Plaintiff Kevin Tucek is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He is scheduled to complete his eight-year prison sentence on July 20, 2020. Plaintiff Tucek has no financial resources to afford to pay for a host site and no friends or family outside of prison who can take him in or pay for his housing. Because his MSR term is indefinite, Tucke faces a likelihood of lifetime imprisonment due to the unavailability of compliant housing and his inability to afford housing, if it were available, outside of prison.

## The Statutory Schemes At Issue

19.     As described in the paragraphs below, individuals convicted of certain sex-related offenses are subject to numerous overlapping statutory and regulatory schemes that severely restrict where they can live and make it nearly impossible for them to satisfy the conditions required for release from prison on MSR.

### Statutes Requiring the Imposition of an Indefinite MSR Term

20.     Illinois' Unified Code of Corrections provides that for all felony convictions, the sentencing court must impose a term of "parole or mandatory supervised release ... as part of the sentencing order." 730 ILCS 5/5-8-1(d).

21.     Individuals convicted of "predatory criminal sexual assault of a child, aggravated criminal sexual assault, or criminal sexual assault" after July 1, 2005, or of "aggravated child pornography ... manufacture of child pornography, or dissemination of child pornography" after January 1, 2009, are subject to the mandatory imposition of an indeterminate term of MSR "rang[ing] from a minimum of three years to a maximum of the natural life." 730 ILCS 5/5-8-1(d)(4).

22.     The Illinois Supreme Court has interpreted 730 ILCS 5/5-8-1(d)(4) to require sentencing courts to impose an indeterminate MSR period of "three years to life" rather than a determinate period within the range of three years to natural life. *People v. Reinhart*, 2012 IL 111719 (2012).

23.     Under 730 ILCS 5/3-14-2.5(d), a person with an indeterminate MSR sentence of "three years to life" can only apply for termination of his MSR after successfully completing three years of MSR outside of prison. This is so because an application for release from indeterminate MSR must be "supported by a recommendation by the releasee's supervising agent," and a "supervising agent" is not appointed until the individual is actually released from prison. As a result, prisoners receive no credit for MSR time they serve while incarcerated and thus can never max out their MSR sentence—a condition widely known as "dead time."

**Conditions for Release from IDOC Custody on MSR**

24.     The Prison Review Board ("PRB") is responsible for establishing release dates from prison for individuals deemed eligible for MSR and setting the conditions for release on MSR. 730 ILCS 5/3-3-1.

25.     The Illinois Department of Corrections ("IDOC") retains custody of all prisoners approved for release on MSR by the PRB and is charged with assuring that prisoners are in compliance with the conditions set by the PRB before they are released from an IDOC facility on MSR. 730 ILCS 5/3-14-2.

26.     Under Illinois law, once the PRB approves a prisoner for release on MSR, such individuals have a due process interest in being released from imprisonment in an IDOC facility. *Murdock v. Walker,* No. 08 C 1142, 2014 WL 916992, at *6 (N.D. Ill. Mar. 10, 2014) (Durkin, J.).

27.     The fact that a prisoner is eligible for release on MSR because he has served his prison sentence and has been approved for release by the PRB does not necessarily mean the individual will be released from prison.

28.     Rather, any prisoner granted release on MSR must meet conditions imposed by Illinois statutes and by the PRB before being released from prison. If such conditions are not met, the parolee will be detained in prison.

29.     One condition of release from prison on MSR is having an approved "host site" at which to reside while serving the MSR term.

30.     IDOC has the sole authority to approve or deny a prisoners' proposed "host site" based on its assessment of whether it meets the conditions imposed by Illinois statutes and by the PRB.

31.     If a prisoner lacks an approved host site, he will not be released from prison even if the PRB has found him eligible for release on MSR.

32.     As shown below, the overlapping layers of restrictions imposed by statute and IDOC policy on where individuals deemed sex offenders can live, along with the lack of housing assistance for indigent prisoners, result in the vast majority of prisoners with a three-to-life MSR sentence being unable to find compliant housing and serving what amounts to life sentences in prison.

**Residency Restrictions that Apply to All Individuals Classified as Child Sex Offenders**

33.     First, for IDOC to approve a host site for an individual sentenced to "three-to-life" MSR, the host site must comply with all of the restrictions imposed under Illinois law on where individuals deemed "child sex offenders" may reside.

34.     720 ILCS 5/11-9.3 (b-5) makes it unlawful "to knowingly reside within 500 feet of a school building or the real property comprising any school that persons under the age of 18 attend ... [unless] the property is owned by the offender and was purchased before July 7, 2000."

35.     There are 4,979 primary and high schools in Illinois. See, Illinois State Board of Education 2015-16 Enrollment Data: http://www.isbe.state.il.us/research/htmls/fall_housing.htm (last visited December 14, 2016).

36.     720 ILCS 5/11-9.3 (b-10) makes it unlawful "to knowingly reside within 500 feet of a playground, child care institution, day care center, part day child care facility, day care home, group day care home, or a facility providing programs or services exclusively directed toward persons under 18 years of age" unless the

property is owned by the offender and was purchased before the effective date of the prohibition.

37.     There are 9,929 licensed daycare providers in Illinois. See, Illinois Department of Children and Family Services Provider Index, available at: https://sunshine.dcfs.illinois.gov/Content/Licensing/Daycare/Search.aspx (last visited December 14, 2016).

38.     In the City of Chicago alone, there are 332 Chicago Park District owned playgrounds. See, https://data.cityofchicago.org/Parks-Recreation/Parks-Containing-Playgrounds/n8h8-zjr3 (last visited December 14, 2016).

39.     Pursuant to 720 ILCS 5/11-9.3(e), the 500-foot distance is measured from the outer property line of the prohibited location to the outer property line of the potential residence.

**Statutory Restrictions on Where Sex Offenders Can Reside While on MSR**

40.     In addition to complying with the housing restrictions imposed by statute on all individuals classified as child sex offenders, prisoners who seek release from the IDOC on MSR must also comply with additional restrictions imposed under Illinois law on where individuals on MSR may reside.

41.     One of the restrictions is 730 ILCS 5/3-3-7(a)(7.6), which makes it unlawful for any individual convicted of a sex offense to reside while on MSR "at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender or has been placed on

11

supervision for a sex offense," unless such housing is an IDOC approved half-way house or medical facility.

42.     This statute is routinely applied to prohibit individuals seeking release on MSR from residing in the same trailer park or multi-building apartment complex as another individual with a past conviction for a sex-related offense.

43.     There are no halfway houses in the State of Illinois that accept parolees classified as sex offenders.

44.     Another statutory restriction is 730 ILCS 5/3-3-7(b-1)(12), which prohibits anyone deemed a sex offender from "resid[ing] near ... parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate" without prior approval of the Illinois Department of Corrections while on MSR.

45.     In the City of Chicago alone, there are 581 parks. See, https://data.cityofchicago.org/Parks-Recreation/Parks-Locations/wwy2-k7b3 (last visited December 14, 2016).

46.     The statute does not define what is meant by "near."

47.     The statute does not define what is meant by "any other places where minor children congregate."[1]

---

[1]     The Fourth Circuit recently found unconstitutional a North Carolina statute containing a very similar restriction in *Does v. Cooper*, 16-6026 (4th Cir., Nov. 30, 2016). The statute at issue there prohibited people classified as sex offenders from "knowingly being ... at any place where minors gather for regularly scheduled educational, recreational, or social programs." *Id*. at 5, citing N.C. Gen. Stat. Art. 7, §14-208.18(a)(3). The Court found the statute unconstitutionally vague because "neither an ordinary citizen nor a law enforcement officer could reasonably determine what activity was criminalized." *Id*. at 21–22.

12

48.     The determination of whether a proposed "host site" complies with these prohibitions is completely within the IDOC's discretion.

49.     Illinois Department of Corrections officials routinely cite the prohibition on living "near" the locations enumerated in 730 ILCS 5/3-3-7(b-1)(12) to deny proposed housing locations.

50.     Illinois law also gives the Illinois Department of Corrections discretion to impose "any other appropriate restrictions concerning the offender's use of or access to a computer or any other device with Internet capability imposed by the Board, the Department or the offender's supervising agent." 730 ILCS 5/3-3-7 (a)(7.11)(iv).

51.     Pursuant to this authority, the IDOC routinely prohibits individuals deemed sex offenders from serving their MSR at any "host site" where any resident has a computer or smart phone with Internet capability.

52.     Illinois law also gives the Illinois Department of Corrections broad discretion to approve or deny housing for individuals seeking release on MSR for any reason they see fit. See, 730 ILCS 5/3-3-7 (b-1)(1) (setting forth that anyone deemed a sex offender who seeks release on MSR may "reside only at a Department approved location.")

53.     This discretion is routinely exercised to deny approval for sex offenders' proposed "host sites," even when those sites comply with all written restrictions (such as restrictions on living near parks, schools, day cares, etc.) enumerated under Illinois law.

## The Unavailability of Host Sites for Indigent Prisoners

54.     The State of Illinois provides no housing resources for sex offenders who are approved for release from IDOC on MSR.

55.     There is no transitional housing (or "halfway houses") in Illinois that accept individuals with sex-related convictions.

56.     There are no homeless shelters in Illinois that accept sex offenders.

57.     Unless a parolee has money to pay for his own housing or people outside of prison who are willing to pay for his housing or take him in, he cannot be released from an IDOC facility to a "host site" on MSR.

58.     The IDOC will not approve a homeless individual's release on MSR due to the lack of an approved "host site."

## The Consequences of the Unavailability of Housing for Sex Offenders who are Sentenced to Indeterminate MSR Terms of "Three Years to Life"

59.     The severe restrictions on where people classified as sex offenders can live while on MSR under Illinois law, in combination with the lack of halfway houses that accept people classified as sex offenders, make it impossible for the vast majority of individuals convicted of sex-related offenses find an approved "host site." Accordingly, they must serve their MSR time in prison.

60.     A prisoner sentenced to a fixed MSR period (for example, an MSR term of three years), who cannot find an approved host site and is imprisoned after being approved for MSR will receive credit towards having served his MSR period while in prison. Eventually, such an individual will "max out" his MSR time—*i.e.*, serve the

full length of his MSR in an IDOC facility—and then be released from IDOC custody with no supervision.

61.     The consequences, however, are entirely different for prisoners with indeterminate MSR sentences of "three years to life." Prisoners with indeterminate MSR sentences who cannot find approved host sites can never max out their MSR time because, as set forth in ¶23 above, they cannot meet the statutory conditions for seeking termination of their MSR while imprisoned in an IDOC facility.

62.     Accordingly, the sentences of these prisoners are effectively converted to life imprisonment, even though such a sentence was never imposed, nor contemplated, the sentencing court.

## Facts Pertinent to the Named Plaintiffs

### Paul F. Murphy

63.     Plaintiff Paul F. Murphy, 61, is a prisoner at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He was convicted in 2011 of aggravated child pornography, for which he was sentenced to 36 months probation.

64.     In August 2013, Murphy's probation was revoked because, while homeless and reporting his addresses on a weekly basis pursuant to state statute, he was arrested for sleeping in the doorway of a church.

65.     Murphy was sentenced to three years in prison at 50 percent, plus two years of MSR. In February 2014, his MSR sentence was amended to three years to life.

66. The PRB approved Murphy for release on MSR on March 3, 2014.

67. To date, the IDOC has not released Murphy from prison because he cannot find an approved "host site" at which to serve his MSR.

68. Murphy has no money to pay for housing and cannot earn any money because he is in prison.

69. Murphy has no living family members or friends outside of prison who could help him pay for housing.

70. Murphy's only true option for housing outside of IDOC is a halfway house or homeless shelter.

71. Murphy applied for housing at a halfway house in East St. Louis, Illinois. At the time he applied, it was the only halfway house in the state that accepted sex offenders. When he applied, he was told that there was a five-year waiting list for a room at this halfway house.

72. The halfway house in East St. Louis subsequently closed.

73. Now, there are no halfway houses or homeless shelters in Illinois that will accept sex offenders.

74. The state of Illinois provides no financial resources for sex offenders who cannot afford their own housing while on MSR.

75. IDOC will not release a homeless individual on MSR.

76. Because his MSR term is indefinite, Murphy faces imprisonment in the Illinois Department of Corrections for the rest of his life. Murphy will never be able to meet the statutory requirements discussed above for an approved "host site,"

which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

**Stanley Meyer**

77.     Plaintiff Stanley Meyer, 41, is an inmate at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He was convicted in 2008 of criminal sex assault and sentenced to 48 months in jail at 85 percent and an MSR sentence of three years to life.

78.     Plaintiff Meyer has completed his prison sentence. The PRB approved Meyer for release on MSR on May 12, 2011.

79.     To date, the IDOC has not released Meyer from prison because he cannot find an approved "host site" at which to serve his MSR.

80.     Meyer has no money to pay for housing and cannot earn money to pay for housing because he is in prison.

81.     Meyer has no family members or friends outside of prison who can help him pay for housing.

82.     Because his MSR term is indefinite, Meyer faces imprisonment in the Illinois Department of Corrections for the rest of his life. Meyer will never be able to meet the statutory requirements discussed above for an approved "host site," which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

17

**J.D. Lindenmeier**

83.     Plaintiff J.D. Lindenmeier, 34, is an inmate at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He was convicted in 2007 of predatory criminal sexual assault and sentenced to six years in jail at 85 percent, plus an MSR sentence of three years to life.

84.     Lindenmeier has completed his prison sentence. The PRB approved Lindenmeier for release on MSR on July 18, 2011.

85.     Lindenmeier has a supportive family and friends outside of prison who have offered to help him successfully serve his MSR. While his family members cannot afford to pay for Lindenmeier's housing, they are willing to take him into their own homes.

86.     With the help of these friends and family members, Lindenmeier has made numerous efforts to find compliant housing to satisfy the requirements for his release from prison on MSR, but IDOC officials have rejected all of his proposed host sites.

87.     Lindenmeier has proposed the following locations, each of which was rejected:

- His father's home; denied because house is located within 500 feet of prohibited location (*e.g.*, school or daycare);

- His mother's home; denied because residence contains a computer and smart phone;

- His girlfriend's home; denied because house is located within 500 feet of prohibited location (*e.g.*, daycare)**;**

- His sister's home; denied because his sister has children and a

smartphone;

- His father's girlfriend's home; denied because house is located within 500 feet of prohibited location (*e.g.*, daycare); and

- His mother's boyfriend's home; denied because house contains a computer and is located within 500 feet of prohibited location (*e.g.*, school).

88.     Lindenmeier has no other options for obtaining housing outside of prison.

89.     Because his MSR term is indefinite, Lindenmeier faces imprisonment in the Illinois Department of Corrections for the rest of his life. Lindenmeier cannot meet the statutory requirements discussed above for an approved "host site," which is necessary for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

**Keenon Smith**

90.     Plaintiff Keenon Smith, 19, is an inmate at Pinckneyville Correctional Center in Pinckneyville, Illinois, and is a registered sex offender. He was convicted in 2012 of criminal sexual assault, for which he was sentenced to five years in prison, plus an MSR term of three years to life.

91.     Smith has completed his prison sentence. The PRB approved Smith for release on MSR on November 4, 2016.

92.     To date, the IDOC has not released Smith from prison because he cannot find an approved "host site" at which to serve his MSR.

93.     While Smith does not personally have any resources to pay for housing, Smith's mother, who is an elementary school teacher, is willing to take Smith into her home or pay for his housing elsewhere at an approved "host site."

94.     Smith's mother has proposed at least 12 different host sites in Chicago and the suburbs, but IDOC has rejected all of the proposed sites, including the following:

- Smith's mother's home in Calumet City, Illinois; denied because house is "a three minute drive" from the victim's residence;

- Four different apartments in Calumet City; denied because too close to various unidentified prohibited locations (including daycares and schools);

- An apartment in South Holland, Illinois; denied because too close to a daycare;

- Cornerstone Halfway House in Chicago, Illinois; denied because it will not accept an individual with a sex-related conviction;

- Four different apartments in Chicago, Illinois; denied because too close to various unidentified prohibited locations (including daycares and parks);

95.     IDOC officials rejected Smith's mother's home as a "host site" on the basis that it was "a three minute drive" to the victim of Smith's offense.

96.     There is no statutory prohibition on an offender's living a certain driving distance from a victim.

97.     In fact, the victim's residence is over 5,000 feet from Smith's mother's residence.

98.     Illinois law prohibits certain offenders from living within "500 feet" of their victims. 720 ILCS 5/11-9.3 (b).

99.     IDOC officials would not give Smith's mother an explanation as to why her residence was deemed too close to the victim or what an acceptable distance from the victim would be.

100.    For several other of the addresses Smith's mother proposed, IDOC officials told her they were too close to a park. Illinois law, however, does not set forth a specific distance an individual on MSR must live from a park (as opposed to a playground). IDOC officials have not told Smith's mother what an acceptable distance from a park is.

101.    Due to the extensive restrictions imposed on where sex offenders can live under state law and the arbitrary way in which IDOC officials apply the restrictions concerning where parolees can live, Smith cannot locate an approved "host site," which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

102.    Because his MSR term is indefinite, Smith faces imprisonment in the Illinois Department of Corrections for the rest of his life.

**Jasen Gustafsen**

103.    Plaintiff Jasen Gustafsen, 32, is an inmate at Lincoln Correctional Center in Lincoln, Illinois, and a registered sex offender. He was convicted in 2013 of aggravated child pornography, for which he was sentenced to four years in prison at 50 percent, plus a term of mandatory supervised release of three years to life.

104.    Gustafson earned three months good time, thereby converting his two-

year sentence into a sentence of one year and nine months. He has now completed his prison sentence. The PRB approved Gustafson for release on MSR on October 19, 2014.

105.    Gustafson has no resources to pay for his own housing outside of prison. He does, however, have two supportive family members (his mother and his aunt) who are willing to take him in. While neither his mother nor his aunt can afford to pay for Gustafson's housing elsewhere, they are both willing to house him in their own homes while he serves his MSR.

106.    IDOC officials have rejected both proposed host sites.

107.    IDOC officials rejected Gustafson's mother's residence because it was too close to a prohibited location (*e.g.*, a daycare).

108.    IDOC officials rejected his aunt's residence as a host site because she has grandchildren who regularly visit her.

109.    Gustafson has no other options for seeking housing outside of prison.

110.    Because his MSR is indeterminate, Gustafson faces imprisonment in the Illinois Department of Corrections for the rest of his life. Gustafson cannot meet the statutory requirements discussed above for an approved "host site," which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

**Alfred Aukema**

111.    Plaintiff Alfred Aukema, 43, is an inmate in Taylorville Correctional

Center in Taylorville, Illinois, and is a registered sex offender. He was convicted in 2013 of criminal sexual assault, for which he received a five-year prison sentence at 85 percent, plus a term of mandatory supervised release of three years to life.

112.   He is scheduled to complete his five-year sentence on September 7, 2017.

113.   Plaintiff Aukema has no financial resources to afford to pay for a host site and no family or friends outside of prison who can help him pay for housing.

114.   Because his MSR term is indefinite, Aukema faces imprisonment in the Illinois Department of Corrections for the rest of his life. Aukema will never be able to meet the statutory requirements discussed above for an approved "host site," which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

**Kevin Tucek**

115.   Plaintiff Kevin Tucek, 33, is an inmate at Taylorville Correctional Center in Taylorville, Illinois, and a registered sex offender. He was convicted in 2014 of criminal sexual assault, for which he received an eight-year prison sentence, plus a term of mandatory supervised release of three years to life.

116.   He is scheduled to complete his prison sentence on July 20, 2020.

117.   Plaintiff Tucek has no financial resources to afford to pay for a host site and no family or friends outside of prison who can help him pay for housing.

118.   Because his MSR term is indefinite, Tucek faces imprisonment in the

Illinois Department of Corrections for the rest of his life. Tucek will never be able to meet the statutory requirements discussed above for an approved "host site," which is required for release on MSR. Moreover, he can never apply for termination of his MSR period while in prison pursuant to the terms of 730 ILCS 5/3-14-2.5(d), discussed in ¶23 above.

## Class Allegations

119.  Pursuant to Fed. R. Civ. P. 23(b)(2), the named Plaintiffs seek certification of this complaint as a class action. The named Plaintiffs seek to represent two classes consisting of the following:

- **Class One:** All individuals who have received an MSR sentence of three years to life currently detained in the Illinois Department of Corrections who have been approved for release on MSR by the PRB but have been denied release from IDOC custody because of their inability to find an approved host site; and

- **Class Two:** All individuals who have received an MSR sentence of three years to life currently or in the future detained in the Illinois Department of Corrections who will in the future remain detained indefinitely in prison due to the unavailability of host sites.

120.  The Plaintiff Classes seek a declaration that the statutory schemes described above are unconstitutional because they result in routine violations of class members' constitutional right to liberty in violation of the Eighth and Fourteenth Amendments.

121.  The proposed classes are numerous. Based on data available from the Illinois Sex Offender Registry, there are currently approximately 4,000 people imprisoned in the Illinois Department of Corrections who have been convicted of sex

offenses for which state law imposes an indeterminate term of "three years to life" of MSR.

122. Joinder of all class members is impracticable. Not only are the classes very numerous, they are also constantly changing. Class One is consistently growing because individuals are completing their prison sentences and being approved by the PRB for release on MSR. Likewise, Class Two is consistently expanding because additional people are receiving "three to life" MSR terms on a routine basis.

123. There are questions of law and fact common to all class members, including but not limited to the following:

- Does a statutory scheme that results in the extrajudicial imposition of life imprisonment violate the Eighth and Fourteenth Amendments;

- Does a statutory scheme that deprives individuals of their liberty solely because of their inability to afford housing violate the Equal Protection Clause;

- Are Illinois statutes regulating where individuals deemed sex offenders may reside while on MSR void for vagueness because they fail to define what is meant by many of their operative terms and thus fail to give sufficient guidance to IDOC officials and to prisoners seeking compliant housing

124. All individuals falling within the class definitions have been subject to the same statutory scheme. Given the commonality of the questions pertinent to all class members, a single declaratory judgment would provide relief to each member of the class.

125. Defendants have acted and continue to act in a manner adverse to the rights of the proposed classes, making final declaratory relief appropriate with respect to the classes as a whole.

126. Plaintiffs and the classes they seek to represent have been directly injured by the statutory schemes and practices challenged herein; and members of the class are currently at risk of future harm from the continuation of these policies and practices.

127. Plaintiffs will fairly and adequately represent the interests of the class; and the Plaintiffs' claims are typical of the claims of all members of the proposed class.

128. Plaintiffs' counsel are experienced in civil rights litigation, including *Monell* claims, (b)(2) class actions, and constitutional matters on behalf of incarcerated people. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

### COUNT I – FOURTEENTH AMENDMENT
### SUBSTANTIVE DUE PROCESS
### (Against Both Defendants)

129. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

130. Under the scheme described above, a prisoner approved for MSR will only be released from prison to an approved "host site" (*e.g.*, housing that complies with all of the restrictions imposed by statute, the IDOC and the PRB).

131. The multiple layers of prohibitions imposed on where individuals can live creates an unmeetable condition (*e.g.*, the restrictions are so onerous that for the vast majority of people approved for MSR they are effectively impossible to meet), forcing those subject to the requirements to spend the duration of their MSR term incarcerated.

132. For those prisoners with an MSR sentence of "three years to life," those unmeetable conditions result in life imprisonment because they can never meet the conditions for release from prison on MSR, nor can they meet the conditions for termination of their MSR.

133. The three-years-to-life sentence, combined with the onerous housing restrictions results in a prison sentence that exceeds the sentence imposed by the sentencing court in such an unexpected manner as to impose a shocking interference on class members' liberty interests.

134. The punishment shocks the conscience because it is far out of proportion to the offense.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that the housing restrictions described herein as applied to the class violate the Fourteenth Amendment of the U.S. Constitution;

d)  Enter a preliminary and then permanent injunction prohibiting Defendants from continuing enforcement of the unconstitutional policies and practices identified herein;

e)  Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)  Grant such other relief as this Court deems just and proper.

### COUNT II – FOURTEENTH AMENDMENT
### EQUAL PROTECTION
### (Against Both Defendants)

135.  Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

136.  Release from prison on MSR involves a liberty interest that cannot be denied simply on the basis of an individual's poverty.

137.  The statutory and regulatory schemes at play here make it impossible for an indigent person sentenced to a "three to life" term of MSR to be released from prison.

138.  An individual cannot be released from prison unless he has an approved "host site" that meets statutory, PRB and IDOC requirements.

139.  An indigent prisoner without access to financial resources outside of prison cannot afford to pay for housing at a "host site."

140.  The state provides no financial resources, housing assistance or transitional housing ("halfway houses") for individuals who have convictions for sex related crimes.

141.     Life imprisonment is not the only way to serve the government's interests in knowing the whereabouts of indigent individuals approved for release on MSR. Rather, the state has alternative means of serving those interests—*i.e.*, by subjecting those individuals to electronic monitoring with GPS. See 730 ILCS 5/3-3-7(a)(7.7) (requiring individuals convicted of crimes requiring the imposition of a "three to life" MSR term to "wear an approved electronic monitoring device ... that has Global Positioning System (GPS) capability for the duration of the person's parole, mandatory supervised release term, or extended mandatory supervised release term.")

142.     Accordingly, the statutory and regulatory schemes at issue in this case result in a severe and permanent deprivation of liberty for indigent persons without a sufficiently rational connection between the legislative purpose and the means used to achieve that purpose.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)     Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)     Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)     Enter judgment declaring that the housing restrictions described herein as applied to the class violate the Equal Protection Clause;

d)     Enter a preliminary and then permanent injunction prohibiting Defendants from continuing enforcement of the unconstitutional policies and practices identified herein;

e)     Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f) Grant such other relief as this Court deems just and proper.

## COUNT III – FOURTEENTH AMENDMENT
## PROCEDURAL DUE PROCESS – VOID FOR VAGUENESS
### (Against Defendant Madigan)

143. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

144. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient clarity that persons of ordinary intelligence need not guess at their meaning.

145. Several of the statutory regulations on where individuals sentenced to "three to life" MSR terms may live are invalid under the vagueness doctrine.

146. Specifically, the prohibition on living "near" parks, schools, day care centers, swimming pools, beaches, theaters, "or any other places where minor children congregate," as set forth in 730 ILCS 5/3-3-7(b-1)(12), is unconstitutionally vague because it does not define what is meant by "near" and does not define what is meant by "places where minor children congregate."

147. Those provisions fail to provide a person of ordinary intelligence fair notice of what is required to comply with the statute, making it likely that IDOC officials, who have unreviewable discretion to interpret those terms, will enforce the statutes in different ways against different people.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)  Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)  Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)  Enter judgment declaring that 730 ILCS 5/3-3-7(b-1)(12) is void for vagueness;

d)  Enter a preliminary and then permanent injunction prohibiting Defendants from continuing enforcement of 730 ILCS 5/3-3-7(b-1)(12);

e)  Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)  Grant such other relief as this Court deems just and proper.

### COUNT III – FOURTEENTH AMENDMENT
### PROCEDURAL DUE PROCESS
### (Against Defendant Baldwin)

148.  Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

149.  Illinois law gives the Illinois Department of Corrections very broad discretion to deny approval of a "host site" for any reason it sees fit.

150.  Specifically, 730 ILCS 5/3-3-7 (b-1) sets forth that anyone deemed a sex offender who seeks release on MSR may "reside only at a Department approved location" and must "comply with all other special conditions that the Department may impose that restrict the person from high-risk situations and limit access to potential victims."

151.   The IDOC routinely misuses the discretion it has been granted under this statute to deny approval of proposed "host sites" for reasons not enumerated in any statute.

152.   Moreover, under 730 ILCS 5/3-3-7 (a)(7.11)(iv) the IDOC can impose "any other appropriate restrictions concerning the offender's use of or access to a computer or any other device with Internet capability imposed by the Board, the Department or the offender's supervising agent."

153.   The IDOC routinely misuses the authority granted under this statute to prohibit individuals deemed sex offenders from serving their MSR at any host site where any resident owns a computer or smart phone with Internet capability, although such a blanket prohibition is not set forth in any statute and is not reasonably related to any rehabilitative or other legitimate interest.

154.   The IDOC's decision to deny approval of a "host site" is not appealable and is not reviewed by any other entity.

155.   A statutory scheme that grants the IDOC excessive and unreviewable discretion to deny approval of housing and thereby keep individuals who have been granted MSR in prison violates due process.

156.   Likewise, the IDOC's misuse of their discretion to deny approval of housing without adequate justification violates due process.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)     Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)      Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)      Enter judgment declaring that the terms of 730 ILCS 5/3-3-7 (b-1) and 730 ILCS 5/3-3-7 (a)(7.11)(iv) violate the Fourteenth Amendment because they vest excessive discretion with IDOC officials;

d)      Enter judgment declaring that the IDOC's policy and practice of imposing a blanket prohibition on allowing individuals deemed sex offenders to live at host sites where any resident owns a computer or smart phone violates the Fourteenth Amendment;

e)      Enter a preliminary and then permanent injunction prohibiting Defendants from continuing enforcement of 730 ILCS 5/3-3-7(b-1)(12);

f)      Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

g)      Grant such other relief as this Court deems just and proper.

## COUNT IV – EIGHTH AMENDMENT
### (Against Both Defendants)

157.    Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

158.    A criminal sentence must be proportionate to the crime for which the defendant has been convicted.

159.    Imposition of an effective life sentence on prisoners entitled to release on MSR simply because they cannot find housing that complies with the restrictions on where they are allowed to live is grossly disproportionate and without reasonable justification.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)      Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)  Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)  Enter judgment declaring that the statutory schemes described herein as applied to the class violate the Eighth Amendment of the U.S. Constitution;

d)  Enter a preliminary and then permanent injunction prohibiting Defendantsfrom continuing the unconstitutional policies and practices identified herein;

e)  Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)  Grant such other relief as this Court deems just and proper.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
773-283-3913