**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL MURPHY, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 16 C 11471 |
| v. | ) | |
| | ) | |
| LISA MADIGAN, et al., | ) | Judge Kendall |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

I.     Contrary to Defendants' Claims, Plaintiffs Alfred Aukema and Kevin Tucek
Have Standing to Proceed with this Action ................................................................3

II.    This Case Is Properly Pled under §1983 Rather than as a *Habeas
Corpus* Action ........................................................................................................5

III.   Defendants Have Not Put Forth a Sound Basis for Dismissal of
Plaintiffs' Claims.....................................................................................................7

      A.    Plaintiffs' Complaint Sets Forth A Claim for Violation of Plaintiffs'
Substantive Due Process Rights ...................................................................7

      B.    There Is No Sound Basis to Dismiss Plaintiffs' Equal Protection
Claim (Count II)........................................................................................11

      C.    The Prohibition on Living "Near" "Places Where Minor Children
Congregate" Is Void for Vagueness (Count III) ............................................13

      D.    Defendants Have Not Set Forth a Basis for Dismissal of Plaintiffs'
Procedural Due Process Claim Against Defendant IDOC Director
Baldwin (Count IV) ...................................................................................15

      E.    Defendants' Arguments for Dismissal of Plaintiff's Eighth Amendment
Claim (Count V) Should be Rejected ..........................................................16

CONCLUSION....................................................................................................................18

## TABLE OF AUTHORITIES

***Case Law***

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979) ................................4

*Bearden v. Georgia,* 461 U.S. 660 (1983) ............................................12

*Belleau v. Wall*, 811 F.3d 929 (2016) .................................................9-10

*Carmody v. Bd. of Trustees of University of Illinois*, 747 F. 3d 470 (7th Cir. 2014) .............5

*Clapper v. Amnesty Int'l USA*, 568 U.S. __, 133 S. Ct. 1138 (2013) ................................3

*Doe v. Cooper*, 842 F.3d 833 (4th Cir. 2016)..........................................14

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ..............................................11

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)...................................13

*Heck v. Humphrey*, 512 U.S. 477 (1994) ..............................................5-6

*Hill v. Colorado,* 530 U.S. 703 (2000) ..................................................13

*Ingraham v. Wright*, 430 U.S. 651 (1977)..............................................17

*Johnson v. United States*, 135 S.Ct. 2551 (2015)....................................14

*Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) ......................18

*Murdock v. Walker,* 2014 WL 916992, 08 C 1142
(N.D. Ill. Mar. 10, 2014) (Durkin, J.)..................................6, 11, 15

*People v. Younger*, 2015 WL 5554994, 2015 IL App 1st 130540-U2015
(Ill. App., Sept. 21, 2015) ...............................................4

*Saiger v. City of Chicago*, 37 F. Supp. 3d 979 (N.D. Ill. 2014) ...................10

*Werner v. Wall,* 836 F.3d 751 (7th Cir. 2016)........................................5-9

*Westefer v. Snyder*, Nos. 00-162GPM, 00-708-GPM,
2006 WL 2639972 (S.D. Ill. 2006) ...................................4

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ...............................................6

*Williams v. Illinois*, 399 U.S. 235 (1970).........................................11, 12

***Statutes***

730 ILCS 5/5-8-1 ................................................................1

730 ILCS 5/5-8A-3 .............................................................1

730 ILCS 5/3-14-2.5 ..........................................................2

730 ILCS 5/3-3-7 ..........................................................2, 13-15

730 ILCS 150/3(a)(1)..........................................................10

725 ILCS 205/3................................................................10

## INTRODUCTION

Plaintiffs have brought this suit to challenge the constitutionality of Illinois' scheme for regulating sex offenders approved for release from the Illinois Department of Corrections ("IDOC") on Mandatory Supervised Release ("MSR"). As detailed in the complaint, the challenged scheme results in a class of people being held in prison indefinitely after the completion of their sentences of incarceration due to their inability to find housing that meets the approval of the IDOC, which is given broad discretion to deny approval of proposed housing locations.

Under Illinois law, people convicted of certain offenses[1]—including Plaintiffs and the members of the proposed class—are sentenced to an indefinite term of MSR ranging from "a minimum of 3 years to a maximum of natural life" following their term of imprisonment in the IDOC. 730 ILCS 5/5-8-1(d)(4).[2] Illinois law further requires that all persons sentenced to three years to life of MSR "shall be placed in an electronic home detention program for at least the first 2 years" of their MSR terms. 730 ILCS 5/5-8A-3(g). Thus, the IDOC will not release a prisoner subject to these statutes from the IDOC unless and until he has an approved "host site" at which to serve his term of MSR (*e.g.*, the IDOC will not release sex offenders who are eligible for MSR into homelessness).

An overlapping system of state regulatory schemes severely restricts the housing

---

[1]    The statute applies to individuals convicted of "predatory criminal sexual assault of a child, aggravated criminal sexual assault, or criminal sexual assault, on or after [July 1, 2005]," and to individuals convicted of "aggravated child pornography ... manufacture of child pornography, or dissemination of child pornography after Jan. 1, 2009." 730 ILCS 5/5-8-1(d)(4).

[2]    Although MSR serves some of the same purposes as traditional parole (*i.e.*, facilitating supervised reintegration into society for a former prisoner), MSR is conceptually distinct from parole in a significant way—that is, "parole" represents an opportunity for a prisoner to serve some part of a prison sentence outside of prison walls, while MSR is a wholly separate sentence that only commences after the prisoners' sentence of incarceration is completed.

available to persons deemed sex offenders, making it impossible for the vast majority of persons convicted of sex-related crimes (especially those without financial resources) to meet this requirement for release on MSR. Therefore, such prisoners remain in prison during their MSR. Compounding the problem is that under 730 ILCS 5/3-14-2.5(d), a person with an indeterminate MSR sentence of "three years to life" can only apply for termination of his MSR after successfully completing three years of MSR outside of prison.[3] As a result, prisoners detained in an IDOC facility after having been approved for MSR by the Prisoner Review Board ("PRB") receive no credit for MSR time they serve while incarcerated and can never apply for termination of their MSR. The consequence is that individuals who have served their prison sentences and who (through no fault of their own) cannot find housing are forced to remain in prison indefinitely — thereby effectively serving life sentences.

Plaintiffs' complaint (Dkt. 1) identifies five ways in which the challenged scheme violates Plaintiffs' and others' constitutional rights. First, Plaintiffs contend that the requirement that individuals cannot be released from prison on mandatory supervised release ("MSR") unless and until they have an approved "host site" violates their substantive due process rights (Count I). Second, Plaintiffs contend that Illinois' statutory scheme violates the Equal Protection Clause because it deprives indigent persons of their liberty solely because of their inability to afford housing (Count II). Third, Plaintiffs contend that 730 ILCS 5/3-3-7(b-1)(12), which prohibits anyone deemed a sex offender from "resid[ing] near ... parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate" while on MSR is void for vagueness because it does not define the terms "near" or "places where minor children congregate" (Count III). Fourth, Plaintiffs contend that the Illinois Department of

---

[3] This is so because an application for release from indeterminate MSR must be "supported by a recommendation by the releasee's supervising agent," and a "supervising agent" is not appointed until the individual is actually released from prison. 730 ILCS 5/3-14-2.5(d).

Corrections violates class members' procedural due process rights by misusing its broad discretion to deny approval of housing and thereby keep individuals who have been granted MSR in prison (Count IV)[4]. Fifth, Plaintiffs contend that the statutory scheme violates the Eighth Amendment because it serves to impose a disproportionate sentence and criminalizes the status of homelessness (Count V).

In response, Defendants Illinois Attorney General Lisa Madigan and Illinois Department of Corrections Director John Baldwin filed a joint motion to dismiss Plaintiffs' complaint. Dkt. 14. The analysis below addresses each of Defendants' arguments, showing that there is no proper basis for dismissal of the complaint.

## ARGUMENT

### I. Contrary to Defendants' Claims, Plaintiffs Alfred Aukema and Kevin Tucek Have Standing to Proceed with this Action

Defendants argue that Plaintiffs Alfred Aukema and Kevin Tucek's claims are not ripe for review and that they must be dismissed from the case because, unlike the other Plaintiffs in this matter, they "have not completed their sentences of incarceration" and have not yet been "approved by the PRB for mandatory supervised release" and thus "their claims are [] hypothetical and speculative." Def. Memo, Dkt.16-1 at 6–7. In fact, there is nothing unduly speculative and/or hypothetical about Plaintiffs Aukema and Tucek's claims, and under a proper analysis of the law they both have standing to pursue their claims.

It is certainly true that Plaintiff Aukema and Tucek's claims are based upon an allegation of a future injury, but the alleged future injury here amounts to an injury-in-fact under the "case or controversy" requirement because the threatened injury is "certainly impending" and there is a

---

[4]    Plaintiffs erroneously identified their fourth count as a second "Count III" and their fifth count as "Count IV" in the Complaint. That error is corrected for purposes of this brief. The procedural due process claim against the IDOC is referred to as Count IV and the Eighth Amendment claim is referred to as Count V.

3

"substantial risk that the harm will occur." *Clapper v. Amnesty Int'l USA*, 568 U.S. __, 133 S. Ct. 1138, 1150, n.5 (2013) (citations and internal quotation marks omitted). Put differently, an injury-in-fact is sufficiently alleged where, as here, "there exists a credible threat" that a statute alleged to be unconstitutional will be enforced against the Plaintiff. *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979); see also *People v. Younger*, 2015 WL 5554994, 2015 IL App 1st 130540-U2015 at ¶21 (Ill. App., Sept. 21, 2015)  ("Considering the statutory scheme he is subject to, it is certain that defendant will be required to be electronically monitored for the duration of his MSR term, as the monitoring requirement is not discretionary. As such, the application of the mandatory electronic monitoring condition for release is not an 'abstract' possibility."); *Westefer v. Snyder*, Nos. 00-162GPM, 00-708-GPM, 2006 WL 2639972, at *9 (S.D. Ill. 2006) ("Plaintiffs have brought civil rights claims based upon policies and procedures that apply to all adult parolees who face or might in the future face parole revocation proceedings, and certifying a class will ensure that the agreed-upon relief will be felt by all such parolees.")

Here, as set forth in the complaint, there are at least six reasons that Plaintiffs Aukema and Tucek face "a credible threat" of impending injury under the challenged statutory and regulatory schemes sufficient to confer standing to bring this challenge:

(1)     Plaintiffs Aukema and Tucek are in prison for sex-related crimes for which they have received MSR sentence of three years to life. Mr. Aukema's sentence of incarceration will be completed on September 27, 2017, and Mr. Tucek's on July 20, 2020. (Dkt. 1 at 23);

(2)     Illinois statutes require individuals such as Plaintiffs Aukema and Tucek to obtain IDOC-approved "host sites" before being released from incarceration on MSR. (Dkt. 1 at 9);

(3)     There are multiple layers of Illinois statutes and parole restrictions that severely restrict Plaintiffs' ability to obtain compliant housing in order to satisfy the host-site requirement (Dkt. 1 at 8–14);

(4)     Neither Plaintiff Aukema or Plaintiff Tucek has resources to pay for housing

4

outside of prison and there are no halfway houses that accept sex offenders who are on MSR (Dkt. 1 at 12, 23);

(5)     The Seventh Circuit has recognized the difficulty, if not impossibility, of sex offenders' finding residential housing that complies with the onerous laws restricting where such individuals can live, identifying the matter as "a pervasive problem." See *Werner v. Wall*, 836 F.3d 751, 766 (7th Cir. 2016) (Hamilton, J., dissenting);[5] and

(6)     There are currently hundreds of people imprisoned in the IDOC who are eligible for release on MSR but who cannot find housing and are therefore stuck in prison for years after the completion of their sentences, including Plaintiffs Murphy (approved for MSR in 2014), Meyer (approved for MSR in 2011), Lindenmeier (approved for MSR in 2011), Gustafsen (approved for MSR in 2014) (Dkt. 1 at 6.). This suggests that Aukema and Tucek's claims are not speculative.[6]

At this point in the litigation, Plaintiffs are entitled to establish the legitimacy of these factual assertions related to their standing and, in particular, to establish that a credible threat exists that they will remain incarcerated indefinitely merely because (through no fault of their own) they cannot find compliant housing to meet the host site requirement for release on MSR. See *Carmody v. Bd. of Trustees of University of Illinois*, 747 F. 3d 470, 477 (7th Cir. 2014) (Arguments that turn on disputed factual questions "cannot be resolved on a motion to dismiss.")

## II.     This Case Is Properly Pled under §1983 Rather than as a *Habeas Corpus* Action

Defendants next contend that the Complaint must be dismissed as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits §1983 actions that "would render a conviction or sentence invalid." Dkt. 16-1, Def. Memo, at 7–13. In support, Defendants assert that Plaintiffs'

---

[5]     See *Id*. at 766 ("This case presents an extreme version of a pervasive problem in the criminal justice system. … State and local governments have enacted numerous restrictions on the activities, employment, and housing of released sex offenders. Those restrictions can make it difficult, and in some cases literally impossible, for released offenders to live and work in compliance with all the laws that apply to them.")

[6]     Due to Keenon Smith's atypical access to financial resources and community support (namely, his mother's extraordinary efforts to find housing that would meet IDOC requirements and her ability to pay for housing on her son's behalf), Smith was able to locate compliant housing that met IDOC approval and was released from prison on MSR on January 24, 2017. Accordingly, Plaintiffs agree that his claim for equitable relief is moot.

lawsuit "seeks to invalidate [their] criminal sentences," and therefore their claims can only be pled as requests for *habeas corpus* relief. *Id*. at 13. But contrary to Defendants' representations, Plaintiffs are not challenging the validity of their convictions; the duration of their prison sentences; the validity of their MSR sentences; or the duration of their MSR sentence. Nor have Plaintiffs sought as relief release from incarceration or a change in their status.

Rather, Plaintiffs are challenging the statutes and regulations that determine how their MSR sentences are administered—namely, the overlapping regulatory and administrative schemes that force them to remain incarcerated long after the expiration of the prison term to which they were sentenced. Likewise, the relief Plaintiffs seek is not release from confinement or a change in confinement status, but invalidation of the schemes regulating how MSR is administered. Such claims are properly pled as §1983 challenges. See *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) ("[P]risoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration)" are cognizable under Section 1983).

Indeed, courts have recognized in several recent cases similar to this one that challenges to parole or MSR procedures are properly pled under §1983. See *Werner v. Wall,* 836 F.3d 751 (7th Cir. 2016) (considering a §1983 challenge to policy under which Wisconsin Department of Corrections held paroled sex offenders in county jails until they could find housing)[7]; *Murdock v. Walker,* 2014 WL 916992 at *6, No. 08 C 1142 (N.D. Ill. Mar. 10, 2014) (Durkin, J.) (rejecting IDOC's claim that prisoners' due process challenge to IDOC policies regarding release of prisoners on MSR had to brought as a habeas action).

---

[7]     As discussed in more detail below, the claims alleged in *Werner v. Wall* directly overlap the legal claims at issue here. *Werner* properly proceeded in both the District Court and the Seventh Circuit as a §1983 claim. By implication, if Defendants' arguments were correct, the Seventh Circuit would not have had jurisdiction over the matter.

### III.   Defendants Have Not Put Forth a Sound Basis for Dismissal of Plaintiffs' Claims

#### A.   Plaintiffs' Complaint Sets Forth A Claim for Violation of Plaintiffs' Substantive Due Process Rights

Defendants contend that Plaintiffs' substantive due process count (Count I) should be dismissed because it is duplicative of Plaintiffs' Eighth Amendment claim. Dkt. 16-1, Def. Memo, at 13. As set forth below, Defendants' position is contrary to law and should be rejected.

##### 1.   The Seventh Circuit Has Recognized that there Is Overlap between Substantive Due Process and Eighth Amendment Claims

At the outset, Plaintiffs draw the court's attention to *Werner v. Wall*, 836 F.3d 751 (7th Cir. 2016).[8] The case was neither cited nor referenced by Defendants in their motion to dismiss, but it involves comparable facts and addresses many of the same legal issues at stake in the case at hand—namely, whether it violates the Eighth and/or Fourteenth Amendments for a state to refuse to release a person convicted of a sex-related offense who is eligible for release from prison custody because the person cannot find (through no fault of his or her own) an acceptable permanent residence. *Werner* directly contradicts Defendants' arguments for dismissal of Plaintiffs' substantive due process claim.

The facts in *Werner* were as follows: Mr. Werner, a convicted sex offender, was forced to remain incarcerated at night for more than a year beyond his release date because he was unable to find an acceptable permanent residence pursuant to Wisconsin DOC policy (which has since been rescinded) that sex offenders could not be homeless while on parole. *Werner*, 836 F.3d at 754. Accordingly, Mr. Werner was required to reside in a local jail at night until he was able to find compliant housing. *Id*. at 756. Mr. Werner was only released from the jail on weekdays for four hours a day to search for a suitable residence and find work, during which he was

---

[8]     A petition for writ of certiorari was filed with the U.S. Supreme Court on Jan. 16, 2017. See 2017 WL 345180 (U.S.) (Appellate Petition, Motion and Filing), Case No. 16-898.

accompanied by a chaperone. *Id*. After the four hours, he was taken back to the jail for the night. *Id*.[9] Mr. Werner sued under 42 U.S.C. §1983, claiming that the officials who continued to detain him beyond his mandatory release date violated his constitutional rights under the Eighth and Fourteenth Amendments. The district court found that the officials were entitled to qualified immunity. On September 1, 2016, a divided panel of the Seventh Circuit affirmed. *Id*.

Although *Werner* was ultimately decided based on qualified immunity and did not "address definitively the constitutional issue[s]" at stake, *id*. at 759, it is clear that both the majority and the dissenting opinions assumed that valid constitutional claims had been made in the case and (it is no stretch to say) constitutional violations had in fact occurred. *Id*. at 770 (Hamilton, J., dissenting) ("The policymaking defendants should have known that AD 02-10 would result in unconstitutional deprivations of liberty in cases like Werner's, where the parolee did not deliberately fail to comply with parole conditions."); *see also id*. at 764 ("[T]he DOC is not free to hold inmates indefinitely for such problems as failure to find suitable housing on its part.")[10]

*Werner* acknowledges that there is ambiguity in the law as to whether a claim challenging the constitutionality of refusing to release sex offenders without their first obtaining housing are best viewed under the Due Process Clause or the Eighth Amendment. See *id*. at 759-761 ("Other circuits have employed a variety of approaches invoking Eighth Amendment and due process

---

[9]     Mr. Werner's detention in the county jail, though restrictive (he was, after all, confined 148 out of 168 hours a week in the county jail) was nonetheless less severe and injurious than the confinement faced by Plaintiffs in this matter. Unlike Mr. Werner, Plaintiffs are not permitted to enjoy any of the freedoms of the outside world, including the opportunities to seek out available housing and/or look for work. Plaintiffs remain fully subject to the harsh regimentation of confinement in their penal institutions.

[10]     Elsewhere in its opinion, the majority acknowledged that "the continued detention of a person beyond the expiration of their prison sentence 'violates his rights under the Fourteenth Amendment.'" *Id*. at 761 (internal citations omitted).

protections.")[11] See also *id*. at 768 (Hamilton, J., dissenting) ("The argument is that because some cases found unauthorized continued custody violated the Eighth Amendment while others found it violated the Due Process Clause of the Fourteenth Amendment, the controlling law was not 'clearly established.'"); see also oral argument at

http://media.ca7.uscourts.gov/sound/2016/sk.14-1746.14-1746_04_06_2016.mp3 at 26:20—

26:27 (Judge Hamilton: "We may be dealing with kind of the edge between due process of law and the Eighth Amendment.")

     The acknowledged overlap in these theories suggests that there is no good basis at this point to dismiss Plaintiffs' Substantive Due Process or Eighth Amendment claims.

     **2.**     **Public Safety Does Not Demand Continued Incarceration of Individuals Entitled to Release on MSR Who Do Not Have Approved Host Sites**

     Defendants have not defended the requirement that individuals eligible for release on MSR remain confined in prison unless and until they find an approved host site on public safety grounds. However, the public safety concerns at stake are relevant to the instant motion because if house arrest at a fixed host site were the only way to protect public safety, then the requirement that an individual obtain fixed housing or else remain incarcerated may be justified.

     In discovery, Plaintiffs intend to show that there is no legitimate public safety justification for this requirement. This is so for at least four reasons. First, house arrest is not the only way to monitor the whereabouts of a person on MSR. The Seventh Circuit has lauded the use of GPS technology as a "less invasive form of supervision" that benefits "convicted criminals as well as society." See *Belleau v. Wall*, 811 F.3d 929, 939 (2016) (Flaum, J.,

---

[11]     Moreover, the majority suggests that, if viewed under the due process clause, the best available legal theory is one of substantive due process as opposed to procedural due process. *Id*. at 761("Mr. Werner has presented the due process argument to us solely as a matter of procedural due process, but we think that *Kingsley*, *McNeil*, and *Baker* suggest that substantive due process principles are implicated here.")

concurring) (explaining that a GPS "anklet monitor" has the ability " to determine the plaintiff's location at all times, " *id*. at 937 and "[to] know exactly where you are at every minute of every day." *Id*. at 938.) Second, Illinois could adopt a procedure similar to that described in *Werner* where a prison or jail serves as a "host site," but the person who is entitled to release on MSR is allowed to leave during the day for lawful purposes such as looking for housing and obtaining work that would enable them to pay for housing outside of prison. Third, Illinois could follow the procedures it already has in place for monitoring the whereabouts of homeless sex offenders who are not on MSR. See, 730 ILCS 150/3(a)(2)(ii) (sex offenders without fixed residences are required to report weekly, in person, to the local law enforcement agency and to describe where they have stayed the seven previous days); *Saiger v. City of Chicago*, 37 F. Supp. 3d 979, 983 (N.D. Ill. 2014) (explaining how 730 ILCS 150/3(a)(1) differentiates between sex offenders who have a fixed residence and those who do not). Finally, Illinois law provides a procedure for civil commitment of so-called "sexually dangerous persons" who cannot safely be reintegrated into society. If a particular prisoner eligible for release on MSR who does not have a host site poses such a risk, the state can seek civil commitment of that person rather than keep all homeless people eligible for MSR in prison without regard to whether they pose an ongoing risk. See 725 ILCS 205/3 (authorizing states attorneys and the attorney general to file a petition to have an offender civilly committed).[12]

At this stage in the case, Plaintiffs are entitled to develop this evidence, which it contends demonstrates the lack of reasonable basis for the statutory scheme that keeps Plaintiffs and other individuals sentenced to indeterminate terms of MSR in prison indefinitely.

---

[12]     Indeed, other states, including Wisconsin and California, allow sex offenders to be homeless while on parole. See *Werner v. Wall*, 836 F.3d at 758 (showing that policy requiring homeless sex offenders to remain in county jails has been rescinded); *In Re Taylor,* 343 P. 3d 867 (Cal. 2015) (discussing homelessness among sex offender parolees in the state).

**B.      There Is No Sound Basis to Dismiss Plaintiffs' Equal Protection Claim (Count II)**

Plaintiffs' Equal Protection theory is that the statutory scheme requiring Plaintiffs to obtain compliant housing before being released on MSR irrationally discriminates against those who are too poor to afford housing. Defendants argue that Plaintiffs' Equal Protection Claim should be dismissed because "poverty or indigence is not a suspect class, and the challenged statutes and polices easily survive rational basis review." Dkt. 16-1, Def. Memo, at 14.

While Plaintiffs agree that indigent persons are not considered a "suspect class" under Equal Protection jurisprudence, the restrictions at issue here are still subject to strict scrutiny because they implicate the Plaintiffs' and others' fundamental right to liberty. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); see also *Id*. at 115 ("Certain substantive rights we have recognized as fundamental; legislation trenching upon these is subjected to strict scrutiny, and generally will be invalidated unless the State demonstrates a compelling interest and narrow tailoring."); *Williams v. Illinois*, 399 U. S. 235 (1970), (finding that a State cannot subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum "solely because they are too poor to pay the fine.")[13]

Based on this case law, Plaintiffs' complaint states a claim that state cannot meet its burden to show that the scheme whereby it permanently imprisons indigent sex offenders who

---

[13]      While Courts have noted that prisoners do not have a fundamental liberty interest in being granted early release from a prison sentence on parole (see, *e.g.*, *Kendrick v. Hamblin,* 606 F. App'x 835, 837 (7th Cir. 2015) ("Parole statutes do not give rise to a protectable liberty interest when they provide that parole is discretionary.")) the Plaintiffs here have already discharged their prison sentences and been granted MSR. Under similar circumstances, this court has recognized that a Plaintiff has a liberty interest in being released from confinement in prison. *Murdock v. Walker,* No. 08 C 1142, 2014 WL 916992, at *6 (N.D. Ill. Mar. 10, 2014) (After the PRB approved prisoners for release "that approval [becomes] a form of statutory liberty that [can]not be revoked without appropriate procedures.")

have been granted MSR simply because they cannot afford to pay for a fixed place of residence is necessary to serve a compelling state interest.

Moreover, even if rational basis is the proper standard of review, Plaintiffs are entitled to establish in discovery that the state lacks a rational basis for its incarceration of individuals approved for release on MSR on the basis of their inability to afford housing. Plaintiffs contend that, in light of the many suitable alternatives to imprisonment identified above (*e.g.*, GPS monitoring, more frequent reporting to law enforcement, using a jail as a host site from which MSR can be served, and/or seeking civil commitment of specific individuals who pose a present threat if not incarcerated), lifetime incarceration of sex offenders who have been granted MSR is not rationally related to legitimate state interests.[14] See *Bearden v. Georgia,* 461 U.S. 660, 665-67 (1983) ("Whether analyzed in terms of equal protection or due process, the issue [of the constitutionality of a criminal statute revoking an indigent defendant's probation for failure to pay a fine] ... requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose'.") (quoting *Williams*, 399 U.S. at 260). Defendants' blanket assertions to the contrary notwithstanding, it is not a cut-and-dry question whether it is "rational" to conclude that public safety requires the imposition of the challenged fixed-residency restriction. At the very least,

---

[14]     Indeed, Courts across the country have consistently held that corrections officials can ensure sex offenders comply with registry requirements without mandating that they secure a permanent residence. See generally Stephanie N.K. Robins, Homelessness Among Sex Offenders: A Case for Restricted Sex Offender Registration and Notification, Comment, 20 TEMP. POL. & CIV. RTS. L. REV. 205, 209–11(Fall 2011) (collecting cases); see also, *e.g.*, *People v. Allman*, 321 P.3d 557 (Colo. App. 2012) (holding a car could be a residence and could be reported as such); *Twine v. State*, 910 A.2d 1132 (Md. 2006) (holding that a sex offender has a "residence" within the meaning of the state registry statute "if that person has a fixed location at which the registrant is living," including a shelter or "fixed location where he intended to return on a regular basis"); *Commonwealth v. Wilgus*, 40 A.3d 1201 (Pa. 2012) (holding homeless sex offender could report as his residence "the soup kitchen or the general outdoor area where he was sleeping").

there are disputed issues of fact as to the rationality of the practice, and Plaintiffs should be allowed to pursue their claim.[15]

> **C.    The Prohibition on Living "Near" "Places Where Minor Children Congregate" Is Void for Vagueness (Count III)**

Plaintiffs challenge on void-for-vagueness grounds 730 ILCS 5/3-3-7(b-1)(12), the Illinois statute granting parole agents the authority to restrict where individuals on MSR can reside. The statute prohibits anyone deemed a sex offender from "resid[ing] near ... parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate" without prior approval of the Illinois Department of Corrections while on MSR. Dkt. 1 at 12. Plaintiffs claim that the terms "near" and "other places where minor children congregate" are void for vagueness because (1) the language on its face does not convey sufficiently definite warning as to the proscribed conduct when read by a person of "ordinary intelligence." *Hill v. Colorado,* 530 U.S. 703, 732 (2000); and (2) the language does not offer enforcement officials adequate guidance concerning the precise scope of the activities they aspire to proscribe. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). In their motion, Defendants claim that Plaintiffs' void-for-vagueness claims should be dismissed because the challenged provisions have a "plainly legitimate sweep" and because Plaintiffs have the opportunity to seek clarification from the IDOC prior to any violation. Dkt. 16-1, Def. Memo, at 16-19. For the reasons set forth below, Defendants' arguments should be rejected

First, as concerns the term "near," which modifies where Plaintiffs may "reside," the Defendants all but admit that there is no clarity as to what "near" means in the statute. The Defendants acknowledge that "the outer boundaries of [the term] 'near'" is undefined, and they

---

[15]    It also bears noting that the question of the "rationality" of incarcerating indigent offenders who have been granted MSR is distinct from Plaintiffs' other claims, namely whether prolonging inmates' incarceration for is a lawful solution to the unavailability of compliant housing to those who are indigent.

nowhere define what is meant by the term "near." Dkt. 16-1, Def. Memo, at 18. Given Defendants' failure to define the term "near," how can anyone else be expected to do so?[16]

Defending the term's clarity, Defendants argue that the challenged law would "clearly prevent plaintiffs from living within 500 feet of a prohibited locations." *Id*. at 18. Yes, but so what? Supreme Court precedent "squarely contradict[s] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 135 S.Ct. 2551, 2560–61 (2015). All persons deemed sex offenders are prohibited from living within 500 feet of schools, playgrounds and daycare centers pursuant to 720 ILCS 5/11-9.3 (b-10), but Plaintiffs do not contend that statute is unconstitutionally vague. Rather, Plaintiffs challenge the vagueness of 730 ILCS 5/3-3-7(b-1)(12), which, apart from the undefined term "near," grants parole officers unfettered discretion to determine where Plaintiffs and others on MSR are permitted to "reside," thereby allowing parole officers, for example, to deny approval for housing that is within 1,000 feet, one mile, or three miles from "parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate" at their whim. This is not a hypothetical fear. See, Dkt. 1, at 20-21 (showing that parole agents rejected 12 different host sites proposed by Keenon Smith's mother on the basis that they were "too close" to various prohibited locations and refused to state what an acceptable distance from such locations was.)

Second, as concerns the phrase "any other places where minor children congregate," there is strong authority establishing that such a term is insufficiently clear. See, *Doe v. Cooper*, 842 F.3d 833, 842-43 (4th Cir. 2016) (invalidating on vagueness grounds a similar provision);

---

[16]     As the late Justice Scalia put it (in a case involving vague terms in the RICO statute), "How can the public be expected to know what the statute means when the judges and prosecutors themselves do not know, or must make it up as they go along?" *Sorich v. U.S.*, 129 S.Ct. 1308, 1346 (2009) (citations omitted).

see Dkt. 1 Complaint at 12. The Defendants seek to distinguish that case by arguing that here, unlike there, the challenged provision is "informed by [a] specific list of examples," thereby serving to define the scope of the challenged phrase. Dkt. 16-1, Def. Memo, at 19.

This argument is unpersuasive for at least two reasons: (1) the "specific list of examples" in the statute — *e.g.,* "parks, schools, day care centers, swimming pools, beaches, theaters," — does not define the phrase "any other places where minor children congregate." If it did, the list would follow (not precede) the phrase, as was the case in North Carolina decisions relied on by Defendants; and (2) the "specific list of examples" is, practically speaking, little more than a hodgepodge of locations, clumping together "swimming pools," "theaters" and "schools," among other locations. Even assuming it was meant to serve to define the scope of the challenged phrase, the list raises more questions than it answers. That is, it lacks, as the court explained in *Doe*, 842 F.3d at 842-43, "defining standards" concerning "how many minors must gather at the place" and "whether a place where mixed groups of minors and adults gather." *Id*. at 843. Accordingly, the statute remains constitutionally vague since "neither an ordinary citizen nor a law enforcement officer could reasonably determine what activity was criminalized." *Id*. at 844.

Defendants' last argument for dismissal is that the statute is not unconstitutionally vague because Plaintiffs can ask a parole officer the specific reasons why a host site may have been denied and even challenge a parole officer's decision. Dkt. 16-1, Def. Memo at 19. But asking about or challenging the decision of a parole officer who is vested with unconstrained discretion does not save an unconstitutionally vague statute, since, practically speaking, the parole officer can say whatever he or she wants to support the decision.

**D.     Defendants Have Not Set Forth a Basis for Dismissal of Plaintiffs' Procedural Due Process Claim against Defendant IDOC Director Baldwin (Count IV)**

In arguing that Plaintiffs' due process claim against the IDOC should be dismissed, the

Defendants seek to liken it to the claim rejected in *Murdock v. Walker*, 2014 WL 916992, where the plaintiffs alleged that IDOC fails to give prisoners adequate notice that the IDOC must approve host site locations before they can be released (and/or notice when their proposed host site location are not approved). Dkt. 16-1, Def. Memo at 19-21.

However, Defendants have misconstrued Plaintiffs' claim. As set forth in the Complaint (Dkt. 1 at 31–33), Plaintiffs' claim is that IDOC officials routinely misuse the broad discretion they have been granted under the statutes vesting them with authority to determine whether a proposed housing site complies with the statutory release conditions and conditions set by the Prisoner Review Board to deny approval of proposed "host sites" for arbitrary reasons unrelated to public safety or prisoner rehabilitation and not enumerated in any statute. See, Dkt. 1 at ¶87 (showing that IDOC has denied approval of host sites because some member of the household owns a smartphone); ¶92–100 (showing that that IDOC has denied approval of a host site is denied because it is a certain "driving time" from a prohibited location); ¶108 (showing that IDOC has denied approval of a host site because a residents' grandchildren occasionally visit). Plaintiffs should be afforded an opportunity to develop this evidence in support of their claims.

### E. Defendants' Arguments for Dismissal of Plaintiff's Eighth Amendment Claim (Count V) Should be Rejected

Defendants seek to dismiss Plaintiffs' claim that the statutory scheme here results in an effective life sentence for Plaintiffs who (through no fault of their own) cannot obtain housing, thereby violating the Eighth Amendment's prohibition against disproportionate sentences. Dkt. 16-1, Def. Memo, at 21-22. Defendants make two arguments for dismissal: (1) "[Plaintiffs] do not show that [they] have 'effectively' been given a life sentence," and (2) that, even if the sentence "did result in an 'effective life' sentence, that would not violate the Eighth Amendment," since Aggravated Criminal Sexual Assault and Predatory Sexual Assault "may be

punished with a sentence of up to natural life" and "if he offender [had] previously committed other sex crimes, he would be subject to a life sentence." *Id.*

Neither of these argument provides a proper basis for dismissal. First, it is certainly true that Plaintiffs have only asserted that the challenged statutory scheme imposes an "effective" life sentence on Plaintiffs, but at this stage of this litigation, that's all Plaintiffs can do and all that they are required to do. To be sure, Plaintiffs seek to prove the validity of the assertion through discovery, including by producing evidence concerning the severe lack of housing options available for individuals deemed sex offenders while on MSR; examining statistical evidence concerning the rates at which members of the proposed class are actually able to find compliant housing and obtain release from prison on MSR; and testifying about their own extensive, unsuccessful efforts to find housing.

Second, Defendants' argument that Plaintiffs' Eighth Amendment claim should be dismissed because the law potentially subjects those who have committed Aggravated Criminal Sexual Assault and Predatory Sexual Assault to life sentences is a *non sequitor*, since the challenged schemes subject individuals to its terms who have not been convicted of these crimes and who have never committed a previous sex crime. See, Complaint, Dkt. 1 at 21 (stating that Plaintiff Gustafson was convicted of "aggravated child pornography" for which he was sentenced to four years in prison).

Apart from the Eighth Amendment's prohibition on disproportionate punishments, there is a second way that Plaintiffs' Eighth Amendment rights have been violated. The Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977). The Supreme Court has held that laws that criminalize an individual's status, rather than specific conduct, are unconstitutional. *Robinson v.*

17

*California*, 370 U.S. 660 (1962)."[17]

Here, Plaintiffs alleged that the challenged legal scheme effectively punishes Plaintiffs for being homeless. Under the law, if the choice of being homeless is voluntary then status is not being criminalized. See *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) (Enforcement of anti-camping ordinances may violate the Eighth Amendment when there is inadequate shelter space available for all of a city's homeless individuals). But here, it is not the Plaintiffs' fault that they are homeless; it is a result of a lack of compliant housing, including a complete absence of homeless shelters that will accept them; a lack of halfway homes; and an array of laws and parole restriction that put most housing off limits. The requirement that Plaintiffs on MSR have a fixed address effectively criminalizes their status as homeless individuals in violation of the Eighth Amendment. At the very least, Defendants' Motion to Dismiss should be denied so Plaintiffs have an opportunity to establish through discovery that there is a lack of available housing, making living in a state of transiency the only available option for Plaintiffs.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss in its entirety.

---

[17]  By way of background, the Cruel and Unusual Punishment clause of the Eighth Amendment "circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes ...; second, it proscribes punishment grossly disproportionate to the severity of the crime ...; and third, it imposes substantive limits on what can be made criminal and punished as such...." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977).

Respectfully submitted,

/s/ Mark G. Weinberg
/s/ Adele D. Nicholas
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
773-283-3913