**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | |
|---|---|
| Paul Murphy, et al., | ) |
| | )    No. 16 C 11471 |
|        Plaintiffs, | ) |
| | )    Judge Virginia M. Kendall |
| Lisa Madigan, et al.,     v. | ) |
| | ) |
| | ) |
|        Defendants. | ) |
| | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs, a class of indigent sex-offenders, remain imprisoned indefinitely because they cannot find approved housing after completing their prison sentences. Plaintiffs allege violations of their rights under the Eighth and Fourteenth Amendments and are bring this action for declaratory and injunctive relief against Defendants Attorney General Lisa Madigan, in her official capacity as the Attorney General of Illinois, and John Baldwin, in his official capacity as the director of the Illinois Department of Corrections (IDOC). Defendants move to dismiss the Complaint on three grounds: (1) two of the Plaintiffs lack standing because, unlike the other Plaintiffs, they have not finished the terms of their incarceration; (2) the relief requested is appropriate for a habeas corpus action, not a 42 U.S.C. § 1983 action; and (3) Plaintiffs fail to allege sufficient facts for their constitutional claims. The Motion is granted with respect to the two Plaintiffs with time left in their prison sentences; the Motion is denied on the grounds that it should have been brought as a habeas action; and the constitutional claims stand with the exception of the due process claim alleging vagueness.

## I.    Facts

This Court takes the following allegations from the Complaint and treats them as true for purposes of this memorandum opinion and order. There are approximately 4,000 individuals imprisoned in the IDOC who have been convicted for sex-related offenses for which state law imposes three-years to life of "Mandatory Supervised Release" (MSR). (Dkt. 1 at ¶ 3.)  The majority of these individuals are unable to find approved housing ("host sites") to serve their MSR terms and so their MSR sentences are in effect converted to life sentences without possibility of release.  (*Id.* at ¶¶ 1, 4.)  The named Plaintiffs fall into this category.  (*Id.* at ¶ 5.)

Decision makers in IDOC have wide discretion whether or not to release Plaintiffs to serve their MSR terms. Individuals convicted of "predatory criminal sexual assault of a child, aggravated criminal sexual assault" after July 1, 2005, or of "aggravated child pornography … manufacture of child pornography, or dissemination of child pornography" after January 1, 2009, are subject to the mandatory imposition of an indeterminate term of MSR "rang[ing] from a minimum of three years to a maximum of the natural life."  730 ILCS 5/5-8-1(d)(4).  A person with an indeterminate MSR sentence of "three years to life" can only apply for termination of his MSR after successfully completing three years of MSR outside of prison.  730 ILCS 5/3-14-2.5(d); (*Id.* at ¶ 23.)

Plaintiffs allege that the PRB (Prison Review Board) and IDOC misuse their discretion in determining whether to approve proposed host sites. (Dkt. 20 at 16.)  The PRB is responsible for establishing release dates from prison and setting the conditions for release on MSR.  730 ILCS 5/3-3-1.  (Dkt. 1 at ¶ 24.)  The IDOC retains custody of all prisoners approved for release on MSR by the PRB and is charged with assuring that prisoners are in compliance with the conditions set by the PRB before they are released from an IDOC facility on MSR.  730 ILCS

5/3-14-2. The IDOC has the sole authority to approve or deny a proposed host site. (*Id.* at ¶ 30.) The IDOC also has discretion to impose "any other appropriate restrictions concerning the offender's use of or access to a computer or any other device with Internet capability imposed by the Board, the Department or the offender's supervising agency." 730 ILCS 5/3-3-7(a)(7.11)(iv). The IDOC, pursuant to this authority, routinely prohibits individuals from serving their MSRs at any host site where any resident has a computer or smart phone with internet capabilities. (¶ 51.) Plaintiffs allege that the PRB and IDOC misuse the wide discretion granted under the statutory scheme and relevant policies.

The PRB and IDOC rely on several sources from the Illinois Code in making their decisions. For example, it is unlawful to "knowingly reside within 500 feet of a school building[,]" 720 ILCS 5/11-9.3 (b-5); and there are 4,979 primary and high schools in Illinois. (Dkt. 1 ¶¶ 34, 35.) It is also unlawful for a sex offender to "knowingly reside within 500 feet of a playground … [or] day care center" 720 ILCS 5/11-9.3(b-10); and in the City of Chicago there are 332 Chicago Park District owned playgrounds and in Illinois there are 9,929 licensed daycare providers. (*Id.* at ¶¶ 36–38.) A convicted sex offender also may not reside while on MSR at the same address or in the same condominium/apartment building or trailer park where he knows another convicted sex offender has been placed, unless such housing is an IDOC-approved halfway house or medical facility, 730 ILCS 5/3-3-7(a)(7.6); and there are currently no halfway houses in the state of Illinois that accept sex offenders. (*Id.* at ¶¶ 41–43.) Sex offenders are also prohibited from "resid[ing] near … parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate[,]" 730 ILCS 5/3-3-7(b-1)(12); and in the city of Chicago there are 581 parks. (*Id.* at ¶ 45.) There are no definitions of the word "near" or "any other places where minor children congregate" in the Code. (*Id.* at ¶¶ 46, 47.)

IDOC officials routinely cite the prohibition on living "near" the locations in the statute to deny housing (*Id.* at ¶ 49.)

*The Named Plaintiffs*

Four of the named Plaintiffs have completed their sentences of incarceration and remain in prison with indefinite MSR terms. (Dkt. 1 at ¶ 12, 13.)[1] The two other Plaintiffs also have indefinite MSR terms and are indigent, but have not yet completed their sentences of incarceration.

Plaintiff Paul F. Murphy is a prisoner at Taylorville Correctional Center in Taylorville, Illinois and a registered sex offender. (Dkt. 1 at ¶ 12.) In 2011, Murphy was convicted of aggravated child pornography, for which he was sentenced to 36 months of probation. (*Id.* at ¶ 63.) In August 2013 his probation was revoked because while homeless he was arrested for sleeping in the doorway of a church. (*Id.* at ¶ 64.) Murphy was then sentenced to three years in prison plus two years MSR. (¶ 65.) The PRB approved Murphy for release on MSR on March 3, 2014. (*Id.* at ¶ 12.) Murphy applied for housing at a halfway house in East St. Louis, Illinois. (*Id.* at ¶ 71.) At the time he applied, it was the only halfway house in the state that accepted sex offenders, but while he was on the waiting list, the halfway house closed. (*Id.* at ¶¶ 71-72.) Murphy has no money to pay for housing and no family members outside of prison who can provide financial help. (*Id.* at ¶ 12.)

Plaintiff Stanley Meyer is a prisoner at Taylorville and a registered sex offender. (Dkt. 1 at ¶ 13.) He was convicted in 2008 of criminal sex assault and sentenced to 48 months in jail plus an MSR sentence of three years to life. (*Id.* at ¶ 77.) The PRB approved his release on MSR on May 12, 2011. (*Id.* at ¶ 13.) Meyer has not been released because he cannot find a host

---

[1] Plaintiff Keenon Smith has found an approved host site and been released since filing the Complaint. Plaintiffs agree to the dismissal of Plaintiff Smith's equitable claims as moot.

site. (*Id.*) He has no money to pay for housing and no family members outside of prison who can help. (*Id.*)

Plaintiff J.D. Lindenmeier is a prisoner at Taylorville and a registered sex offender (*Id.* at ¶ 14.) He was convicted in 2007 of predatory criminal sexual assault and sentenced to six years in jail plus an MSR sentence of three years to life. (*Id.* at ¶ 83.) The PRB approved him for release on July 18, 2011, but he has not been released because he cannot find an approved host site. (*Id.* at ¶ 14.) Lindenmeier's family members have made substantial efforts to find a host site. (*Id.*) Lindenmeier has proposed six different host sites with various family members who are willing to take him in but the IDOC has rejected all six. (*Id.*) He proposed his father's home which the IDOC denied because the house is within 500 feet of a prohibited location. (*Id.* at ¶ 87.) He proposed his mother's home which the IDOC denied because her residence contains a computer and smart phone. (*Id.*) He proposed his girlfriend's home which the IDOC denied because it is within 500 feet of a prohibited location. (*Id.*) He proposed his sister's home which the IDOC denied because she has children and a smart phone. (*Id.*) The IDOC denied his father's girlfriend's home because it is within 500 feet of prohibited location. (*Id.*) The IDOC denied his mother's boyfriend's home because the house contains a computer and is located within 500 feet of prohibited location. (*Id.*)

Plaintiff Jason Gustafsen is a prisoner at Lincoln Correctional Center in Lincoln, Illinois and a registered sex offender. (Dkt. 1 at ¶ 16.) He was convicted in 2013 of aggravated child pornography, for which he was sentenced to four years in prison at 50 percent plus a term of MSR of three years to life. (*Id.* at ¶ 103.) He earned three months good time, thereby converting his sentence to one year and nine months. (*Id.* at ¶ 104.) The PRB approved Gustafsen for release on MSR on October 19, 2014. (*Id.* at ¶ 16.) He has no financial resources of his own and

no family members who are able to pay for his housing outside of prison. (*Id.* at ¶ 16.) His only options are to stay with his mother or his aunt. (*Id.* at ¶ 16.) The IDOC rejected his mother's home because it is too close to a prohibited location and his aunt's home because she has grandchildren who regularly visit her. (*Id.* at ¶¶ 107, 108.)

The remaining two Plaintiffs have not completed their sentences of incarceration. Alfred Aukema is a prisoner at Taylorville and a registered sex offender. (Dkt. 1 at ¶ 17.) He was convicted in 2013 of criminal sexual assault for which he received a five-year prison sentence plus a term of mandatory supervised release of three years to life. (*Id.* at ¶ 111.) He is scheduled to complete his five-year prison sentence on September 7, 2017. (*Id.* at ¶ 17.) He has no financial resources to pay for a host site and no friends or family outside of prison who can take him in or pay for his housing. Plaintiff Kevin Tucek is a prisoner at Taylorville and a registered sex offender. (*Id.* at ¶ 18.) He was convicted in 2014 of criminal sexual assault for which he received an eight-year prison sentence plus MSR of three years to life. He is scheduled to complete his eight-year prison sentence on July 20, 2020. (*Id.* at ¶ 18.) Tucek has no financial resources to afford to pay for his housing. (*Id.* at ¶ 18.) His indefinite MSR period will in all likelihood result in a lifetime imprisonment. (*Id.* at ¶ 18.)

## II. The Standard of Review

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. at 678).

Defendants move to dismiss the Complaint on three grounds. First, Defendants assert that two of the Plaintiffs' claims are not ripe because they have not yet completed their terms of incarceration. Next, Defendants move to dismiss the Complaint because their claims fall within the scope of habeas corpus rather than 42 U.S.C. § 1983. Finally, Defendants move to dismiss each of Plaintiffs' individual constitutional claims: substantive due process; Eighth Amendment; equal protection; procedural due process; and Plaintiffs' claim that the residency restrictions in the Illinois Code is void for vagueness.

## III.    Ripeness

Defendants assert that Alfred Aukema and Kevin Tucek's claims should be dismissed because they have not completed their sentences and therefore their claims are not ripe for review. (Dkt. 20 at ¶ 10.) "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 807–08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967); *accord, Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 732–733 (1998).). "The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]" *Id.* (internal quotations omitted). To determine whether an action is of "sufficient immediacy and reality" for judicial review requires the court to evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of

withholding court consideration." *Id.* (quoting *Abbott Laboratories*, 387 U.S. at 149.) "Both aspects of the inquiry involve the exercise of judgment, rather than the application of a black-letter rule." *Id.*

Turning to whether the issues are fit for judicial decision, Aukema and Tucek fear that because they do not have the financial resources, they will not be able to find approved housing upon completion of their sentences and therefore they will be incarcerated for life. (Dkt. 1 at ¶ 12, 23.) However, determining now whether their circumstances will remain the same upon their release requires impermissible speculation. *See Wisconsin Right to life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all.") (internal citations omitted). Aukema's sentence of incarceration will be completed on September 27, 2017 and Tucek's on July 20, 2020. Although it is true that they may face the same conundrum as the other Plaintiffs, the Court cannot assume that to be the case. Until they have each gone through the process and proposed sites have been rejected by IDOC, the Court cannot assume that no suitable residence will be located for them to serve out their MSR periods. The Court likewise cannot assume that the relevant laws will remain in effect and unamended.

Other courts have similarly dismissed claims as premature when a prisoner challenges post-release conditions while still in physical custody. In *Kirby v. Siegelman*, a convicted sex offender brought § 1983 claim challenging the Alabama Community Notification Act that, upon his release from prison, required him to notify victims and neighbors of his offender status. 195 F.3d 1285, 1290 (11th Cir. 1999). But because Kirby had not yet been released, the Eleventh Circuit determined that adjudication of his post-release condition was not ripe because he had not yet suffered an injury. *Id. See also United States v. Veal*, 322 F.3d 1275 (11th Cir. 2003)

(applying the *Kirby* holding, challenge to sex offender registration law was not ripe while prisoner was still in prison). Outside of the sex offender context, courts have also rejected claims as unripe which challenge post-release conditions while a plaintiff is still in the prison's physical custody. In *Carver v. Chapman,* for example, prison regulations permitted early release when a prisoner participated in a residential drug abuse treatment program. *Carver v. Chapman*, 2009 WL 1651512 (N.D. Tex. May 21, 2009). The plaintiff challenged the categorical exclusion of inmates with felony convictions involving firearms from eligibility but the district court determined her claims were not ripe because she had not yet participated in and successfully completed a drug abuse program and therefore had not been denied reduction. *Id.* at *2; *see also, e.g., U.S. v. Charmichael*, 343 F.3d 756, 761–762 (5th Cir. 2003) (plaintiffs' challenge to the constitutionality of DNA sampling during supervised release not ripe because plaintiffs had not yet been released); *see also, e.g., Themeus v. ICE*, No. 15 C 39, 2015 WL 3952708 (N.D. Fla June 29, 2015) (challenge to future ICE detention not ripe because plaintiff was still in prison and therefore the removal period had not begun); *see also, e.g., Israel v. Dr. Worral, et al.*, No. 14 C 158, 2014 WL 7212958 (D. Alaska December 17, 2014) (plaintiff's § 1983 claim based on a *future* discretionary parole was not ripe while he was still in prison); *see also, e.g., Abreu v. Ayers*, No. 98-3099, 1998 WL 544968 (N.D. Cal. August 17, 1998) (plaintiff's safety concerns about being released into general population was not ripe when his placement post-release from a security housing unit had not yet been determined.)

Aukema and Tucek are similarly attempting to bring a claim based on post-release MSR conditions when they have not yet been released on MSR. They have not yet suffered an injury. If they are denied housing when their sentences are complete, then their claims will ripen, but in

the meantime, they cannot bring a claim constructed on speculation. Accordingly, Aukema and Tucek's potential future problem is not ripe and dismissal of their claims is proper.

## IV.    Title 42 U.S.C. § 1983

Next, Defendants move to dismiss the Complaint as barred by the *Heck* doctrine because the claims fall in the scope of habeas corpus. Both "42 U.S.C. § 1983 and the federal habeas corpus statue, 28 U.S.C. § 2254 provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). The Court must therefore determine whether Plaintiffs' claims fall in the purview of § 1983 or habeas corpus.

A brief overview of *Heck* and its progeny provides a useful starting point in this analysis. In *Heck*, a prisoner alleged that state officials conducted an arbitrary investigation, had knowingly destroyed exculpatory evidence, and had caused an illegal voice identification procedure to be used at the plaintiff's criminal trial. 512 U.S. at 479. The prisoner in *Heck* was not specifically seeking immediate or speedier release, but because his damages claim challenged the legality of his conviction, the § 1983 claim was dismissed. *Id.* at 481. *Heck* therefore directs the district courts to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," and if it does then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 486–487. Next, in *Edwards v. Balisok*, a prisoner brought a § 1983 action and alleged that his hearing officer had concealed exculpatory witness statements in a hearing on the prisoner's rule infractions; the finding caused him to lose 30 days of good credit. 520 U.S. 641, 643, 646 (1997). Because his claim was based on allegations of the hearing officer's deceit and bias, it necessarily implied the invalidity of the punishment imposed

and therefore was not cognizable under § 1983.  *Id.* at 648.  In its holding, *Edwards* made clear

that *Heck* extends to the decisions of prison disciplinary tribunals, like the Defendants who

determine housing in the instant case.  Defendants also support their *Heck* theory with citations

to several district court cases, such as *Lacy v. Unknown Parole Agent*, that applied the *Heck*

doctrine and prohibited a plaintiff from challenging a PRB decision to revoke MSR.  No. 12 C

9407, 2012 WL 6217529 at *2 (N.D. Ill. Dec. 12, 2012).

Plaintiffs' claims do not fall in line with the *Heck* cases, however, because here the

claims do not "*necessarily* imply the invalidity" of Plaintiffs' sentences but instead challenge the

constitutionality of the procedures applied by Defendants in determining MSR.  *Heck*, 512 U.S.

at 486–487 (emphasis added); *see also Spencer v. Kemna*, 523 U.S. 1 (1998) ("If, for example,

petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong

result,' and if that procedural defect did not 'necessarily imply the invalidity of' the revocation,

then *Heck* would have no application [at] all.")  *See also Wilkinson v. Dotson* 544 U.S. 74, 78

(2005) (Ohio's argument that plaintiffs should have brought their action under habeas "lies in its

jump from a true premise (that in all likelihood the prisoners hope these actions will help bring

about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief).")  In

*Heck*, *Edwards*, and *Lacy*, each of the plaintiffs' claims necessarily implied the invalidity of

either the prisoner's conviction (*Heck*) or disciplinary board's sanction (*Edwards*) or revocation

of MSR (*Lacy*).  In none of the cases did the plaintiffs attack the constitutionality of the

procedures themselves.  *See, e.g., Id.* at *3 (plaintiff conceded that he had received the required

process for the MSR revocation.).

Furthermore, while in *Edwards* the claim of deceit and bias on the part of the decision

maker fell in the purview of habeas, the case was remanded on plaintiff's claim for prospective

injunctive relief because that claim would "not necessarily imply the invalidity" of his loss of good time credits. Edwards requested injunctive relief to correct the prison officials' consistent failure to date-stamp witness statements upon receipt. 520 U.S. 648–649. Plaintiffs' claims are more similar to Edwards' attack on the process of date stamping than to his claim of deceit and bias. In their Complaint, Plaintiffs request that the Court enter a judgment declaring the statutory scheme violates the Eighth Amendment, enter a preliminary and then permanent injunction prohibiting Defendants from continuing the unconstitutional policies and practices, and award attorneys' fees and costs. (Dkt. 1 at 33–34.) Plaintiffs do not allege unlawful acts of the decision makers that would necessarily overturn the decision denying them housing like Edwards' deceit and bias claim. Instead, Plaintiffs allege that the procedure for determining housing is unconstitutional and, like Edwards' claim for injunctive relief, that claim is properly brought under § 1983.[2] Should Plaintiffs prevail, some of the Plaintiffs may, hypothetically, be released on MSR because under constitutional procedures because the Defendants may be more likely approve proposed host sites. The possibility of this outcome, however, does not necessarily imply the validity of their sentences and therefore the claims are not barred by the *Heck* doctrine.

This conclusion is also consistent with *Graham v. Broglin*: "[i]f the prison is seeking what can fairly be described as a quantum change in the level of custody … then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is

---

[2] Similarly, Justice Ginsburg concurred in *Edwards* only with the understanding that had the prisoner alleged other procedural defects, such as the failure of prison officials to specify what facts and evidence supported the finding of guilt, that "[a] defect of this order, unlike the principal 'deceit and bias' procedural defect [prisoner] alleged … would not necessarily imply the invalidity of the deprivation of his good-time credits, and therefore is immediately cognizable under § 1983. *Id.* at 649–650.

challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law[.]"  922 F.2d 379, 381 (7th Cir. 1991).

Defendants rely on *Graham* and assert that Plaintiffs here are seeking a "quantum change" in custody and therefore are barred by *Heck*.  The plaintiff in *Graham* brought a habeas corpus challenge of a denial of his eligibility for a work release program but his claim should have been brought as a civil rights suit: "[t]he line is not a sharp one, and work release falls smack in the middle.  But since we must choose, we think it is closer to the second pole than to the first."  *Id.* at 381.  It follows that if a challenge to denial of a work release decision is not a "quantum" change, then neither would a challenge to the decision of MSR.  Both work release and MSR involve a change in location that, while less restrictive than prison, are a continuation of the sentence.  Defendants do not clarify the distinction between the two but suggest that under *Graham* "claims of entitlement to probation, bond, parole fall within the *Heck* rule," and therefore Plaintiffs' claims are barred.  (Dkt. 20 at 10.)  However, Plaintiffs do not claim "entitlement" to parole or MSR.  Plaintiffs claim entitlement to a constitutional process in determining whether they will be released on MSR, not to release on MSR.  *Richmond v. Scibana* clarifies the distinction first outlined in *Graham*: "a prisoner claiming a right to *release* on parole must use § 2241 (or § 2254 for a state prisoner); but a prisoner claiming that parole officials are apt to use incorrect rules when resolving a future application must use the APA (or 42 U.S.C. § 1983 for a state prisoner)."  387 F.3d 602, 605 (7th Cir. 2004).  Here, Plaintiffs do not claim a right to release but instead that officials are using unconstitutional rules.  Therefore, *Graham* and *Richmond* support Plaintiffs' claims as properly brought under § 1983.

## V. Substantive Due Process Claim

Defendants assert that Plaintiffs' substantive due process claim fails because claims based on the constitutionality of criminal punishments are properly analyzed under the Eighth Amendment and therefore the substantive due process claim is duplicative. (Dkt. 20 at 13.)

Relying on *Albright v. Oliver*, Defendants argue that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 510 U.S. 266, 273 (1994). In *Albright*, the issue was straightforward. The plaintiff asked the court to recognize a substantive right under the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. The Fourth Amendment, however, requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest. *Id.* at 274 (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

The connection between these facts and a specific amendment is not as obvious as the connection between probable cause and the Fourth Amendment in *Albright*. Defendants' argument therefore oversimplifies a "difficult question." *Werner v. Wall*, 836 F.3d 751, 766 (7th Cir. 2016). In *Werner*, a sex offender brought a § 1983 claim alleging Eighth Amendment and due process violations in relation to his multiple detentions before he moved into an approved residence. *Werner* acknowledged, but never resolved, the "difficult question" as to whether the treatment of detained individuals not subject to sentences of incarceration, like the Plaintiffs in this case, is appropriately analyzed under the Eighth Amendment or substantive due process. *Id.* at 760–761. For example, an error in the computation of a sentence implicates the Eighth Amendment while treatment of a pretrial prisoner is governed by substantive standards of Due

Process.  *Id.*  Ultimately, the appellate court found defendants were entitled to qualified immunity and never attempted to reconcile the constitutional tension.  Nevertheless, *Werner* contemplates that the same factual nucleus might raise both Eighth Amendment and substantive due process principles.

Certainly at this early stage of litigation, Plaintiffs' claims are not sufficiently developed to determine whether the claims fit more properly under substantive due process or the Eighth Amendment. A plaintiff is allowed to plead duplicative claims or claims in the alternative: "[a] party may set out 2 or more statements of a claim … alternatively or hypothetically, either in a single count … or in separate ones."  Fed. R. Civ. P. 8(d)(2).  The argument the claim is duplicative holds no water and Plaintiffs' may proceed on their substantive due process claims.

## VI.    Eighth Amendment

Defendants also argue that, should the Court allow Plaintiffs to proceed on both the substantive due process and Eighth Amendment claims that Plaintiffs nevertheless fail to state a claim under the Eighth Amendment because the Constitution does not require strict proportionality between a crime and its punishment.  Defendants further argue that Plaintiffs have not alleged that they have been effectively given life sentences, but even if they had, that Plaintiffs were charged with Class X felonies which may be punished with a sentence of up to natural life in prison.

Protection from disproportionate sentences is just one of the Eighth Amendment's protections.  The Amendment circumscribes the criminal process in three ways: "[f]irst, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such."  *Ingraham v. Wright*,

430 U.S. 651, 667-668 (1977) (internal citations omitted). In particular, "[a] plaintiff states a claim for an Eighth Amendment violation if he is detained in jail for longer than he should have been due to the deliberate indifference of corrections officials." *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015). Defendants only moved to dismiss based on the second circumscribed protection, but Plaintiffs' claim is not based on proportionality.

Plaintiffs have sufficiently alleged that Defendants were deliberately indifferent in failing to release them and therefore state a claim. *See, e.g., Stepney v. Johnson*, 2016 WL 5720367 (N.D. Ill. 2016) (plaintiff stated an Eighth Amendment claim by alleging that prison officials knew that he was eligible for release and deliberately held him beyond his period of incarceration.) According to the Complaint, Defendants knew that Plaintiffs did not have financial resources to find housing, that there are no halfway houses that take sex-offenders in Illinois, and still rejected proposed host sites leading to indefinite incarceration. Based on these allegations, it is hard to envision an acceptable host site for an indigent prisoner: to find a house in 2017 without a smart phone is in it of itself a near impossible task. Taken together with the wide discretion Defendants have in making their housing determinations, the rejections of host sites which results in Plaintiffs' indefinite incarceration may constitute deliberate indifference. *Childress*, 787 F.3d at 439. These allegations are therefore sufficient to support their Eighth Amendment claim.

## VII.    Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which essentially is a direction that all persons similarly situated should be treated alike. U.S. Const. Amend. XIV, *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Often an equal

protection violation occurs when a regulation draws distinctions among people based on a person's membership in a "suspect" class. *Martin v. Shawano–Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002). Suspect classes include race, alienage, and national origin and legislative action that classifies on any of these bases are subject to "strict scrutiny and [it] will be sustained only if [it is] suitably tailored to serve a compelling state interest." *Vision Church*, 468 F.3d at 1000 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). When a statute burdens a person's fundamental constitutional rights, courts also apply strict scrutiny. *Id.* If neither suspect class nor fundamental right is asserted, the Court applies rational review to determine whether the legislative act is constitutional. *Id.* at 1000-01.

Plaintiffs assert that the statutory scheme requiring Plaintiffs to obtain compliant housing before being released on MSR discriminates against those who are too poor to afford housing. (Dkt. 23 at 11.) Plaintiffs concede, however, that indigent persons are not considered a suspect class under Equal Protection jurisprudence, but nevertheless argue for strict scrutiny under the theory that a fundamental right is implicated: freedom from bodily restraint. (*Id.*) Put another way, the permanent imprisonment of indigent sex offenders violates Plaintiffs' fundamental right to freedom from bodily restraint requiring heightened review under the equal protection clause.

Freedom from bodily restraint is a recognized fundamental right protected by the equal protection clause. *See Foucha v. Louisiana*, 504 U.S. 71, 73, 83 (1992); *see also, e.g., Ebonie S. v. Pueblo School Dist. 60*, 695 F.3d 1051 (recognizing freedom from bodily restraint is a fundamental right under equal protection); *see also, e.g., Hydrick v. Hunter*, 500 F.3d 978, 983 (9th Cir. 2007) (same), vacated on other grounds, 556 U.S. 1256 (2009). In *Foucha,* the plaintiff had been civilly committed under the then-Louisiana state process that "allow[ed] a person acquitted by reason of insanity to be committed to a mental institution until he is able to

demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness." 504 U.S. at 73. The Louisiana state appellate court rejected the plaintiff's argument that his equal protection rights were violated by the statutory scheme that allowed confinement of an insanity acquittee based on dangerousness alone. The Supreme Court reversed: "[f]reedom from physical restraint being a fundamental right, the State must have a particularly convincing reason, which it has not put forward, for such discrimination against insanity acquittees who are no longer mentally ill." *Id.* at 86. Undercutting Louisiana's stated rationale for the statute, to protect the community from danger, the court pointed out that criminals who have completed their terms are an "obvious and large category of such persons" who also cannot prove they are not a danger but are nevertheless released on the completion of their sentence. Therefore, there was no particularly convincing reason for discriminating against insanity acquitees.

Like insanity aquitees, indigent prisoners are not a suspect class. Nevertheless, the same fundamental right is a stake here as was in *Foucha*. And as *Foucha* recognized, just as criminals as a group are an "obvious" category of people who might not be able to prove that they are no longer a danger upon the completion of their sentences, nothing in the pleadings suggest that indigent sex offenders are more of a danger to the community than those with financial resources. For example, there is no particularly convincing reason for individuals such as Lindenmeier, whose custodial sentence ended in 2011 and has proposed at least six different host sites, to continue to sit in prison, on the taxpayer's dime, because of his indigent status. There is no reason to believe that if Lindenmeir could afford to live alone that he would be less of a danger than if he were to live in one of the six host sites. There is also no particularly convincing reason for giving Defendants unfettered discretion in approving housing, such that

their decision making process allows them to entirely bar indigent sex offenders' release from prison. Plaintiff Stanley Meyer was convicted in 2008 and sentenced to 48 months in prison. He has already sat in prison more than three years beyond the completion of his sentence and with no end in sight. Undoubtedly the state has an interest in protecting the community from sex offenders, but turning a four year sentence into an indefinite one when there has been no further criminal conduct is an obvious offense to Meyer's fundamental right to freedom from bodily restraint.[3] The equal protection claim survives at this stage.

## VIII. Procedural Due Process

Next, Defendants argue that Plaintiffs fail to state a claim for violations of procedural due process because Plaintiffs had notice and an opportunity to be heard with respect to the IDOC's decisions. (Dkt. 20 at 19.) To succeed in a procedural due process claim, the Plaintiffs must prove that: (1) they have a cognizable liberty interest under the Fourteenth Amendment; (2) they were deprived of that liberty interest; and (3) the deprivation was without due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). "Due process requires government to follow reasonable procedures for minimizing mistaken deprivations of liberty." *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2010).

Defendants assert that because Plaintiffs are part of the same class as those in *Murdock v. Walker*, where the district court held that the plaintiffs did not have a procedural due process claim, that Plaintiffs are bound to the same conclusion here. 2014 WL 916992 (N.D. Ill. 2013). In *Murdock*, plaintiffs, like those here, were sex-offender inmates who were never released on MSR due to lack of an approved housing location. The plaintiffs in *Murdock* brought a

---

[3] As Winston Churchill observed, "[n]othing can be more abhorrent to democracy than to imprison a person or keep him in prison because he is unpopular. This is really the test of civilization."

procedural due process claim challenging the prison's "turnaround procedure." The turnaround policy specifically referred to the IDOC's practice of "literally walk[ing] the person to the front gate of the jail as if he was about to be released. But then, instead of releasing the inmate, the jail employee handed the inmate a notice informing him that he had violated the housing requirement of his release[,]" and were then taken back into custody. *Id.* at *3. The plaintiffs in *Murdock* further had a procedural due process claim based on the fact that they did not receive adequate notice as to why or how their home was unsuitable. The district court held on summary judgment that the plaintiffs had not shown that the turnaround procedure failed to provide them with adequate notice under the due process clause. *Id.* at *12.

The Court faces at least three threshold issues with Defendants' reliance on *Murdock*. First, Defendants ask the Court to accept that the classes are the same without any support for that proposition. There are no proposed legal guideposts for determining whether two classes in two separate cases are the same class. And there are some obvious distinctions between the classes in the two cases. For example, the descriptions of the classes are not identical. According to the Complaint, "The named Plaintiffs are individuals currently being held in the custody of the Illinois Department of Corrections who have been sentenced to serve 'three years to life' MSR terms and are unable to find 'host sites.'" (Dkt. 1 ¶ 5.) In *Murdock*, the district court describes the class as "past, current, and future Illinois sex-offender inmates who were (or will be) approved for release from prison, either on parole or under [MSR]. The Plaintiffs were not (or will not be) actually released from prison on their release date, however, because they lack an approved housing location." *Id.* at *1. In the instant case, Plaintiffs more specifically have been sentenced to three years to life, a specification apparently not applicable to the class in *Murdock*. Second, while this case is at the pleading stage and has not reached class certification,

the district court had the benefit of a complete record at summary judgment in *Murdock*. This makes it even more difficult to do a meaningful comparison of the classes. Third, Defendants only cite to *Johnson v. Meriter* without any parenthetical or further analysis to suggest that case states that one district court's conclusion is binding on a class in any other litigation the class brings. *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012). But in *Johnson*, one district court determined class certification for benefit plan participants' claim under ERISA and analyzed whether divided certification was appropriate. The district court did not consider the class before it in any other case or any conclusions made by another district court as Defendants ask the Court to do here and nothing else in *Johnson* supports Defendants' theory.

But even if the plaintiffs in *Murdock* represent the same class as the Plaintiffs here (sex offenders with indeterminate MSR sentences who cannot find approved host sites), the procedural due process claims are distinguishable. Plaintiffs do not mention the turnaround practice nor do they bring a claim based on inadequate notice. Instead, Plaintiffs allege that "[t]he IDOC routinely misuses the discretion it has been granted under this statute to deny approval of proposed 'host sites" for reasons not enumerated in any statute." (Dkt. 1 at ¶ 151.) "[T]he IDOC's misuse of their discretion to deny approval of housing without adequate justification violates due process." (*Id.* at ¶ 156.) Because Plaintiffs are not challenging the same procedures in their procedural due process claims, the decision in *Murdock* does not foreclose their action.

Defendants further assert that Plaintiffs only set forth facts to support a substantive due process claim, not a procedural one. (Dkt. 24 at 13.) In support of this argument, Defendants cite to *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, in which a former

teacher challenged the substance of the government's decision in terminating him.  143 F.3d 351, 357 (7th Cir. 1998).  It logically follows that because the teacher challenged the substance of the decision, substantive due process applied, "as opposed to challenging the process the decision-makers used on procedural due process grounds."  *Id.* at 357.  Here, Plaintiffs are challenging "the process the decision makers used," and therefore, as contemplated by *Strasburger*, procedural due process is the appropriate claim.  This is similar to the Court's previous discussion in the context of the *Heck* doctrine: Plaintiffs are challenging the procedures, not the result.  Dismissal of the procedural due process claims, therefore, is not appropriate.

## IX.    Void for Vagueness

Defendants move to dismiss Plaintiffs procedural due process claim that the statute granting parole agents the authority to restrict where individuals on MSR can reside, 730 ILCS 5/3-3-7(b-1)(12), is void for vagueness.  Specifically, the statute prohibits anyone deemed a sex offender from "resid[ing] near ... parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate" without prior approval of the Illinois Department of Corrections while on MSR. Dkt. 1 at 12.  Plaintiffs allege that the terms "near" and "other places where minor children congregate" are void for vagueness.

Outside the context of the First Amendment, "a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," i.e., that the law is unconstitutional in all of its applications."  *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 (2008) (citing *United States v. Salerno*, 481 U.S. 739 (1987)).  Plaintiffs do not contest that theirs is a facial challenge to the statute. Plaintiffs also do not contend their claim implicates the First Amendment.[4]  Because Plaintiffs

---

[4] Although numerous First Amendment implications are referenced in the Complaint factually, for example, in the prohibition on host sites with internet access or smart phones, Plaintiffs have not chosen to frame their complaint in

have not alleged a First Amendment violation, their reliance on First Amendment case law is misplaced. In those cases, the vagueness claims were not subject to the heavy burden facial to which attacks arising outside of the First Amendment context are subject. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). Even in *Doe v. Cooper*, cited to by Plaintiffs, a case in which registered sex offenders brought a § 1983 action based on a statute prohibiting the offenders from associating in the presence of minors, the sex offenders specifically had First Amendment claims. 842 F.3d 833 (4th Cir. 2016). The Complaint does not currently allege any violations of their First Amendment rights.

The question then is whether there is "no set of circumstances [] under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). But there are circumstances when the legislature relies on the word "near" and the statutes are valid. *See Cox v. Louisiana*, 379 U.S. 559, 568-69 (1965). To allow the facial attack to proceed here would be to find that any legislation incorporating the term "near" without a definition is per se unconstitutional on vagueness grounds. The Court declines to make such a finding. Nevertheless, the term "near" in the statute compounds the broad discretion IDOC officials have been granted in determining whether to release Plaintiffs on MSR. Plaintiffs sufficiently allege that these rules, taken together and applied to Plaintiffs violate their constitutional rights. But

---

terms of a violation of the first amendment. Such an allegation has been found to be a valid claim in *Packingham v. North Carolina*, by the Supreme Court. 137 S. Ct. 1730 (2017). In this recent decision, the court acknowledged that there is no doubt that sexual abuse of a child is a "most serious crime" and it is clear a legislature "may pass valid laws to protect children[,]" but broadly worded statutes prohibiting sex offenders from accessing, for example, social media like the challenged North Carolina statute in *Packingham* infringe on the First Amendment. The court explained the ever-expanding importance of the internet and speech: "[w]hile we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who want to be. … In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights. It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives. "

without any alleged First Amendment violations, a finding that this provision alone is void for vagueness is not proper and therefore the claim is dismissed for failure to state a claim.

## CONCLUSION

For those reasons, Defendants' Motion to Dismiss is granted with respect to Plaintiffs Aukema and Tucek's claims. The Motion is also granted with respect to the void for vagueness due process claim. The Motion is denied with respect to the remaining counts.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 18, 2017