IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL MURPHY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 16 CV 11471 |
| ) | |
| v. ) | Judge Virginia M. Kendall |
| ) | |
| KWAME RAOUL, Attorney General ) | |
| of Illinois, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **DEFENDANTS' COMPLIANCE PLAN**

On January 15, 2020, the Court entered a Permanent Injunction Order in this matter. Pursuant to that order, Defendants are required to present a plan outlining steps that will be taken to ensure that by January 2, 2021, no *Murphy* class member remains in the custody of the Illinois Department of Corrections ("IDOC" or "the Department") due to an inability to locate a hostsite (Dkt. 156).

**I.    Steps the Department Has Already Taken to Assist *Murphy* Class Members**

Prior to the entry of the Permanent Injunction Order, the Department was proactively working to release *Murphy* class members into the community. The Department's primary focus is, and has always been, ensuring that these individuals are successful during their terms of Mandatory Supervised Release (MSR), while ensuring public safety. Below are steps that the Department has already taken to assist *Murphy* class members in their release:

**A.    Review of Host Site Denials**

The IDOC conducted a review of host site denials for *Murphy* class members. This review examined host sites under the Department's expanded statutory interpretations. While the vast majority of the host sites were denied for statutory (non-discretionary) reasons, at least ten offenders were released as a result of this review.

In addition, the Department reviewed requests from *Murphy* class members to live in another state pursuant to the Interstate Compact for Adult Offender Supervision (the "Interstate Compact"). The Interstate Compact allows an offender who resides in another state, or who has family or employment in another state, to live in that state and be supervised by that state's parole department. The Department looked at transfer requests that were previously rejected, either by the Department or by the transferee state, to see if the request could be revised and resubmitted. Going forward, the Department is committed to working with offenders to successfully complete the interstate transfer process.

### B. Statutory Interpretations

The IDOC has revised its interpretation of 730 ILCS 5/3-3-7(a)(7.6) and has made the following changes:

- IDOC will no longer interpret the statute to bar sex offenders on parole from living in the same trailer parks as other sex offenders, and
- IDOC will no longer interpret "same apartment complex" as prohibiting sex offenders on parole from residing in the same "complex" as other sex offenders if the offender on parole is residing in a building with a different address than the other sex offender.

### C. Changes to IDOC Policies

The IDOC has made a number of changes to its policies regarding host sites for sex offenders:

- IDOC has eliminated the prohibition on living at a host site with computers, routers, wi-fi access, smart TVs or other Internet-related devices, except in limited cases.
- IDOC has eliminated the requirement of a land-line telephone, except where cellular phone service is poor.
- A host site will not be denied solely on the basis of an occasional child visitor unless the child who visits the host site was the victim of the offense.
- The prohibition on living within 500 feet of schools, playgrounds and daycares set forth in 720 ILCS 5/11-9.3 (b-5) will only be applied as required by statute (*e.g.*, when the individual has been convicted of a "child sex offense").
- The prohibition on living "near" "parks … swimming pools, beaches, theaters, or any other places where minor children congregate" without approval of the IDOC (730 ILCS 5/3-3-7(b-1)(12)) will only be applied to individuals who have committed an offense against a minor, and will only be applied if deemed necessary based on the individual parolee's circumstances.
- Parole agents will not deny a host site based solely on the presence of toys or pictures of children.

### D. New Grievance Process

The Department established a new grievance process that allows offenders to grieve the denial of a prospective host site. A statewide training on the new process was conducted on June 5-6, 2019, at Logan Correctional Center. Participants included grievance officers, clinical services supervisors, and casework supervisors from each facility. A training for all Field Services Representatives was also conducted on June 25, 2019. In connection with the new grievance procedure, offenders are now notified in writing of the specific reason a prospective host site was denied.

### E. Scattered Site Housing for Indigent Offenders

In December 2019, the Department began contracting with New Day Apartments (New Day). This vendor locates transitional, apartment style housing for sex offenders, with an eye

towards identifying long-term housing options. The program with New Day runs for approximately 3-4 months. As individuals transition from the New Day apartments into long-term placements, the next eligible *Murphy* class member will replace them in the program. Presently, IDOC has moved three *Murphy* class members into the community using New Day housing. New Day is willing to acquire more properties and the Department has a list of potential candidates who are available as soon as new properties become available.

## II.     Additional Steps the Department Is Undertaking to Release *Murphy* Class Members

Since the entry of the permanent injunction order, the Department has made major strides to release *Murphy* class members from incarceration. Those efforts are outlined below:

### A.     Request for Proposal for Licensed Transitional Housing for Sex Offenders

Presently, the Department is finalizing a Request for Proposal (RFP) for licensed transitional housing locations for the sex offender population. In an effort to achieve full compliance, the Department is prepared to create more than one licensed transitional housing location. This will optimize the Department's ability to cycle as many *Murphy* class members through the transitional housing program and into a more permanent living arrangement.

### B.     Use of Adult Transition Centers

The Department operates two Adult Transition Centers (ATCs) located in Peoria and in Aurora. Akin to work release programs, the ATCs allow individuals who are approximately two years from the expiration of their sentence the opportunity to secure employment in the community. The goal of this program is to establish job opportunities that will follow offenders after their release from IDOC custody. Due to concerns expressed by the community, the Department has historically been reluctant to allow sex offenders into its ATCs. However, the Department recognizes the need to do everything in its power to assist this population to successfully transition into the community. Accordingly, the Department will begin assigning appropriate sex offenders to this program. While this move does not directly capture *Murphy* class members who have already served their sentence, it will undoubtedly impact the future of the *Murphy* class size. Utilizing the ATCs for potential *Murphy* class members will allow them to secure employment and save money so that upon their release they are able to obtain their own housing.

The Department considered placing *Murphy* class members into the ATC program, but presently there is no programmatic component to address a population that has already completed their sentence. It was determined that *Murphy* class members would be better served through a transitional housing option, which is why the Department is pursuing the RFP.

### C.     Working toward Legislative Change

There are many statutory provisions that impede the Department's ability to approve prospective host sites for sex offenders. The endeavor is aggravated for those convicted of child sex offenses as they are subject to even more aggressive statutory provisions. While the

Department does not have the authority to either pass new legislation or disregard existing legislation, it is developing relationships with advocacy groups in hopes that some of the statutory impediments to identifying host sites can be reduced or eliminated through legislative change.

### D. Partnering with the Illinois Department of Human Services (IDHS)

There are a very small number of *Murphy* class members who would likely qualify for IDHS services upon their release. The Department has identified those individuals and is working with IDHS to identify appropriate placements and/or services. Where appropriate, the Department will explore civil commitment proceedings.

### E. Sex Offender Orientation

The Department is in the process of developing an orientation specific to sex offenders. Unlike Parole School, which occurs near the end of an offender's sentence, this orientation will occur shortly after arrival to IDOC. It will focus on informing sex offenders of the specific statutory restrictions applicable to them upon release. Early access to this information is essential in preparing this population to make informed plans for their release.

### F. Training

In June of 2020, the Sex Offender Management Board will provide the Risk of Sexual Abuse of Children ("ROSAC") training to IDOC staff, including parole agents, parole commanders and IDOC therapists. This training will enable our staff to more accurately assess the risk a sex offender poses to a child. This type of assessment will assist the Department in making clinically supported decisions with respect to placing sex offenders in homes with children.

### G. Hiring

The Department recognizes that full compliance with the Permanent Injunction Order will result in a dramatically increased caseload for the parole agents under the Sex Offender Supervision Unit ("SOSU"). Adding nearly 300 parolees to the unit's current caseload is impracticable. In preparation for the increase, the Department is looking to expand the number of agents in the SOSU. SOSU agents receive specialized training prior to joining the unit. Over the next year, the Department plans to offer more opportunities for agents to participate in this training and transition to the SOSU.

## III. Conclusion

The Department is fully committed to expediting the release of *Murphy* class members from incarceration. While the preceding plan outlines the Department's current endeavors, it will continue to proactively explore all possible options and identify creative solutions in order to fully comply with this Court's order. The Department will report new initiatives in its quarterly reports to the Court.

Wherefore, Defendants respectfully request that this Court enter the above plan, and order any further just and proper relief.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: */s/ Sarah H. Newman*
Sarah H. Newman
Assistant Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
312-814-6131
snewman@atg.state.il.us

*Counsel for Defendants*