IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MURPHY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 16 CV 11471 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| KWAME RAOUL, Attorney General of Illinois, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' THIRD QUARTERLY REPORT

On January 15, 2020, the Court entered a Permanent Injunction Order in this matter. Pursuant to that order, Defendants are required to present quarterly reports outlining steps taken to ensure that by March 20, 2021,[1] no *Murphy* class member remains in the custody of the Illinois Department of Corrections ("IDOC" or "the Department") due to an inability to locate a host site (Dkt. 156).

### I. Introduction

The Department has continued to work diligently towards compliance with this Court's Permanent Injunction Order. We have been creative in our attempts to get the men and women in the *Murphy* class out of custody and into the community. COVID-19 continues to demand the Department's focus. It continues to impact our ability to place individuals out of state, as many states still refuse to accept placement through the Interstate Compact. One community partner still requires every person discharged to their location to test negative for COVID-19 prior to placement. Additionally, to prevent the spread of COVID-19 in our parole offices, parole staff were required to work on rotating shifts. Despite these roadblocks, the Department continues to make significant progress towards compliance. Our current efforts are innovative, unprecedented, and reflective of our commitment to the *Murphy* class.

### II. Murphy Class

Presently there are there are currently 249 *Murphy* Class members who remain in IDOC custody past the date of their Mandatory Supervised Release ("MSR"). Since the last report, more than 70 *Murphy* class members have been released. This represents the greatest number of releases since the entry of the Court's order. We must note that two *Murphy* class members were offered placement in the community as participants in the Intensive Community Reintegration

---

[1] The Order sets a compliance deadline of January 2, 2021 (Dkt. 156), but the Amended General Orders 20-0012 extended all deadlines in existing cases by 77 days.

Program ("ICRP") and declined placement. Two other *Murphy* class members were released and subsequently went AWOL. During this reporting period, 24 individuals were added to the class.

Since January 1, 2020, over 160 *Murphy* class members have been released from custody. This is unprecedented progress by the Department and indicative of a genuine commitment to the class. Also, since January 1, 2020, 106 individuals were added to the class.

### III. Steps the Department Is Undertaking to Release *Murphy* Class Members

#### A. Housing Surveys

*Murphy* class members continue to complete housing surveys. Since the last report, facility Field Service Representatives used those surveys to provide individualized housing assistance to class members. The Department continues to expand survey distribution to potential *Murphy* class members who have not yet completed their prison terms. This distribution will include all individuals in our custody serving sentences which include MSR terms of three years to life. This step allows the Department to identify placement options and potential barriers for placement much earlier.

#### B. Collaboration with Stakeholders

Over the past three months, the Department expended considerable efforts collaborating with various stakeholders. In November, the Department's leadership joined the Ohio Department of Corrections' Re-entry Housing Task Force's Quarterly Meeting. During that meeting, Ohio's correctional leadership discussed ideas and strategies specific to reentry planning for the sex offender population. Ohio has been quite successful in their reentry planning efforts. They provided invaluable guidance and a potential roadmap to implement new endeavors aimed at successfully returning sex offenders back to the community.

Additionally, IDOC Director, Rob Jeffreys, presented at the Illinois Sentencing Policy Advisory Council ("SPAC") Regular Meeting. This meeting served as a platform to engage with various state partners, including public defenders, state's attorneys, state and local police departments, legislators, and judges. A primary focus of the meeting was a thoughtful discussion regarding reentry planning for sex offenders. This meeting created a prime opportunity for the Department to the outline the legislative barriers that prevent sex offender placement in the community. Director Jeffreys spoke candidly to this group and strategized about initiatives that will assist the Department in complying with this Court's order.

#### C. Interstate Compact Placements

*Murphy* class members continue to submit requests to live in other states pursuant to the Interstate Compact. As a result of COVID-19 pandemic, many states continue to refuse new

transfers through the Interstate Compact. Going forward, the Department remains committed to working with our partners in other states to successfully transition *Murphy* class members into their desired out-of-state placements.

### D. Expanded Host Site Considerations

The Department continues to be flexible with previous host site restrictions. The Sex Offender Services Unit of the Parole Division ("SOSU") no longer denies placements because of the presence of computers, tablets and smart devices; placements without landline telephone connection; and closely examines placements that have *occasional* child visitors. The SOSU will continue to investigate the use of hotels and/or motels as potential host sites.

### E. Collaboration with Plaintiffs' Counsel

The Department continues to work collaboratively with Plaintiffs' counsel. They continue to assist the Department in identifying potential host sites for *Murphy* class members and continue to work in conjunction with the Department's Field Services Representatives to obtain approval for those placements. This joint effort serves to facilitate placement of *Murphy* class members into the community and prevents the possibility of re-arrest or reincarceration due to registration issues.

### F. Intensive Community Reintegration Program

The Department's Intensive Community Reintegration Program ("ICRP") was developed to assist *Murphy* class members transition into the community. The success of this program rests solely on the Department's ability to establish and maintain relationships with community housing agencies. The Department's Sex Offender Services Unit ("SOSU") works diligently to identify housing partners. Their work has continued over the last reporting period. In addition to their previous partnerships, in recent months their hard work yielded the promise of partnership with three new housing agencies. Two of the contracts are near finalization and one is still in the investigative phase. These new relationships will allow for the placement of more than 50 *Murphy* class members. One placement will permit the housing of child sex offenders, which has been a particularly difficult population to place.

The collaboration with New Beginnings is a fairly new arrangement. Through our partnership with New Beginnings we are currently housing 24 *Murphy* class members in the community. Another agency recently identified by the SOSU is Walton Management. Our partnership with Walton Management will allow for the placement of up to eight sex offenders. Presently there are two *Murphy* class members housed in the community through this agency. The Department is also pursuing a contract with Hand in Hand, which can house up to eight sex offenders.

The relationship with New Day Apartments ("New Day") continues to blossom. Our work with New Day began with one location, housing just one registrant. Presently, there are eight ICRP participants housed at five different locations. In total, five individuals have participated in the New Day's program and successfully reintegrated into the community; and one individual's transition into the community is imminent. This success occurred despite offenders' job opportunities being drastically reduced due to COVID-19.

In continued collaborate with plaintiffs' counsel, we built upon our already established relationship with New Day by allowing class members who have obtained court orders in the *Barnes v. Jeffreys* litigation (No. 20-cv-2137) to utilize unused rooms or unused New Day properties as self-pay host sites. This program has had its own success. Presently there are five individuals housed at New Day under the self-pay option.

### G. Request for Proposal for Licensed Transitional Housing for Sex Offenders

The Department's initial Request for Proposal ("RFP") for licensed transitional housing for sex offender resulted in no responses. Not to be deterred, the Department successfully reposted the RFP and received two responses from proposed vendors. These vendors are under review with our procurement office. If approved, each vendor could potentially hold up to twenty sex offenders. This type of progress towards transitional housing for sex offenders represents remarkable progress for the Department.

While we await a final determination on the procurement process, IDOC has been given the green light to continue to pursue and extend our emergency purchase of care contracts. These contracts will prevent disruption in current services and allow for more vendors to provide transitional housing options to the *Murphy* class. Expanding purchase of care contracts will undoubtedly result in a drastic increase in available beds.

### H. Conference with Field Service Representatives

Field Service Representatives play an integral role helping to identify compliant housing for the sex offenders in our custody. Not only are Field Service Representatives responsible for entering addresses in the system for parole investigations, they also arrange telephone interviews with potential landlords and schedule COVID-19 tests when required for release. They are staunch advocates for their clients. Their dedication is pivotal to the Department's compliance with this Court's Permanent Injunction.

On December 15, 2020, the IDOC Coordinator of Sex Offender Services will host a conference with all agency Field Service Representatives. Our *Murphy* obligations will be a central focus of this conference. This type of brainstorming opportunity is essential as it allows individuals to share success stories and troubleshoot common problems. It also helps the Department's leadership better understand potential barriers for success.

## IV. Conclusion

The Department remains committed to complying with this Court's Permanent Injunction Order. While COVID-19 continues to impact our overall progress and the State, we continue to press forward to identify creative strategies for compliance. The Department is taking extraordinary steps with respect to this population. The overall number of *Murphy* class members does not reflect the work that is being done. This population is being released into the community at an unprecedented rate. We fully expect that through these numerous efforts we will achieve compliance.

                                              Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois         By:    */s/ Sarah H. Newman*
                                                        Sarah H. Newman
                                                        Assistant Attorney General
                                                        100 W. Randolph Street, 13th Floor
                                                        Chicago, Illinois 60601
                                                        312-814-6131
                                                        snewman@atg.state.il.us

                                                        *Counsel for Defendants*