IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MURPHY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 16 C 11471 |
| v. | ) | |
| | ) | |
| KWAME RAOUL, *et al.*, | ) | Judge Kendall |
| | ) | |
| Defendants. | ) | |

**MOTION FOR A RULE TO SHOW CAUSE WHY DEFENDANT
JEFFRIES SHOULD NOT BE HELD IN CONTEMPT OF COURT**

Plaintiffs, through counsel, respectfully request that this Court order Defendant Robert Jeffries, Director of the Illinois Department of Corrections, to show cause why he should not be held in contempt of court for failing to comply with the Court's permanent injunction order. In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs are a class of parolees who have received an indeterminate Mandatory Supervised Release sentence of "three years to natural life." As described in detail in the Court's March 31, 2019, summary judgment opinion (ECF 132), the members of the *Murphy* class are being held in prison beyond the completion of their sentences of incarceration in violation of their rights under the Eighth Amendment and the Fourteenth Amendment's Equal Protection Clause.

In its summary judgment decision, this Court denied summary judgment to both parties on Plaintiffs' procedural due process claim. *Id*. In their procedural due

process claim, Plaintiffs alleged that the IDOC lacked an adequate process to permit a parolee to appeal the rejection of a proposed host site. *Id*. at 51. The Court set the procedural due process claim for trial, noting that the parties disputed whether IDOC treats a host site denial as a "grievable issue" and "whether the IDOC ever advises offenders of their right to … request review of the agent's decision, let alone gives them any information pertaining to how they can challenge an unfavorable disposition." *Id*.

The IDOC sought to avoid trial on this claim and represented to the Court that it would create a new process to permit prisoners to appeal denials of their proposed host sites. Accordingly, the Court entered a permanent injunction requiring IDOC to put forth a plan to ensure the release of the members of the *Murphy* class from prison by no later than January 2, 2021. ECF 156. The IDOC submitted its compliance plan on February 2, 2020. ECF 161. In its compliance plan, the IDOC represented that it had "established a new grievance process that allows offenders to grieve the denial of a prospective host site." ECF 161 at 2. IDOC further represented that, pursuant to this new grievance procedure, "offenders are now notified in writing of the specific reason a prospective host site was denied" and have the opportunity to seek review of that decision. *Id*. The IDOC's formal representation that a new grievance process had been adopted pursuant to the permanent injunction order was the only reason that Plaintiffs did not proceed to trial on their procedural due process claim.

The permanent injunction has been in place for nearly a year, but the IDOC has failed to implement an appropriate process for informing members of the class of the reasons for denial of their proposed host sites and their right to appeal such denials, leaving parolees no recourse when their prospective host sites are denied for improper or unjust reasons. Accordingly, this Court should enter a rule to show cause as to why Defendant Rob Jeffries should not be held in contempt of court.

## ARGUMENT

### I. Legal Standards

A contempt motion may be granted when the movant shows by clear and convincing evidence that the respondent has violated an "express and unequivocal command of a court order." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 711 (7th Cir. 2014). It is not necessary to a finding of contempt that a violation was "willful." *Id*. Rather, it is sufficient that the party "failed to take steps reasonably and diligently to comply with the order." *Id*.; *see also, Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) ("[T]he district court does not ordinarily have to find that the violation was 'willful' and may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered.")

### II. The IDOC Has Failed to Create and/or Implement an Adequate Process for Appeal of Host Site Denials

#### A. Facts Relevant to Robert Vinson

Plaintiff Robert Vinson is a member of the *Murphy* class. He was initially approved for release from IDOC onto Mandatory Supervised Release ("MSR") on

3

July 13, 2013. Ex. 1, Decl. of Dorothy Lakes, at ¶2. Because he was unable to identify a host site, Vinson was not released from prison for more than six years past his release date. *Id*. at ¶3. He finally obtained approval for a host site on August 25, 2019. From August 2019 until September 9, 2020, he resided at 4712 W. Polk St., Chicago, a building owned by a family friend. *Id*. at ¶4. The IDOC approved this host site and deemed it to meet all of the requirements of Illinois law and IDOC policy. *Id.*

On September 9, 2020, Mr. Vinson was taken back into IDOC custody (where he remains to this date) on an alleged violation of the terms of his MSR. *Id*. at ¶5. The violation report alleged that Mr. Vinson had been absent from his host site without permission. *Id*. Mr. Vinson contests that he was absent without permission and believes that the GPS equipment used to monitor his whereabouts malfunctioned.

After Mr. Vinson appeared for a hearing on September 22, 2020, the Prisoner Review Board ("PRB") determined that Mr. Vinson had not violated the terms of his MSR. *Id*. at ¶6. The PRB found that Mr. Vinson's MSR should not be revoked and entered an order setting forth that he was entitled to be re-released to continue his supervised release in the community. *Id.*

**B. The IDOC's Denial of Mr. Vinson's Host Site**

Now, three months after the PRB determined he did not violate his MSR, Mr. Vinson remains in prison because IDOC will not approve his re-release to the same host site at which he previously resided.

The same day that she learned the outcome of the PRB hearing, Mr. Vinson's mother, Dorothy Lakes, resubmitted the 4712 W. Polk Street address. *Id.* at ¶7. More than three weeks passed and Mr. Vinson did not hear anything (in writing or otherwise) about whether the host site was approved or denied. *Id.* at ¶8. On October 16, 2020, Ms. Lakes called Field Services (the IDOC department responsible for host site investigations and approvals) to inquire about the status of the proposed host site. Field Services personnel told her the host site was denied because a child had "visited" the host site. *Id*; *see also,* Ex. 2, Correspondence with IDOC. This denial was not communicated to Mr. Vinson in writing.

Ms. Lakes then contacted undersigned counsel, who inquired with IDOC's attorneys about whether this denial could be reconsidered, given IDOC's representation to the Court that an occasional child visitor to a host site would no longer be considered grounds for denial of a host site. Ex. 1 at ¶9; Ex. 2; *see also* ECF 161, IDOC Compliance Plan, at 2 ("A host site will not be denied solely on the basis of an occasional child visitor unless the child who visits the host site was the victim of the offense.") On October 28, 2020, IDOC's counsel represented that IDOC would reinvestigate the proposed host site. Ex. 1 at ¶8; Ex. 2.

For approximately four weeks, Mr. Vinson heard nothing. Ms. Lakes called Field Services approximately once a week to request an update on whether the host site was approved. Ex. 1 at ¶10. On November 24, 2020, Field Services told Ms. Lakes that the host site was denied on November 16, 2020, because of a "past incident." *Id.*

5

at ¶11. She asked for clarification, but Field Services refused to provide any further reason for the denial. *Id*.

That same day, undersigned counsel followed up with IDOC's attorneys, requesting that this matter be looked at again because the PRB had determined that Mr. Vinson had not violated the terms of his MSR and there thus was no "past incident" that formed a legitimate basis for denial of Mr. Vinson's return to the same host site. Ex. 2, November 24 correspondence.

Meanwhile, Mr. Vinson still had not received any written or unwritten explanation for the host site denial. Mr. Vinson submitted an "offender request" form asking the following: "Did 4712 W. Polk get approve[d] and if not for what reason? Thank you." Ex. 3, Request Form. An unidentified IDOC staff member responded "unsafe/unsuitable conditions." *Id*. That was the entirety of the DOC's response. Mr. Vinson was not given any specific reason why the host site was deemed "unsafe/unsuitable," nor was he advised of any right to appeal or grieve this decision. *Id*.

On November 24, 2020, IDOC responded to Plaintiffs' counsel's email with a more thorough explanation for the denial of the host site. Ex. 2. Counsel stated that the host site was rejected based on the "recommendation of Mr. Vinson's former sex offender therapist [Nicole Blaje]" who expressed the "opinion that Mr. Vinson would be at a higher risk of engaging in problematic sexual behaviors or sexual reoffending if he were placed back at this host site." *Id*. Though set forth in an email

6

to Plaintiffs' counsel long after the decision was made, this rationale for the host site denial was never communicated to Mr. Vinson.

## III. The IDOC's Policy Violates Procedural Due Process

### A. The IDOC's Failure to Inform Parolees of the Specific Reason for a Host Site Rejection Deprives Them of Due Process

As the Supreme Court has long instructed, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (*citing Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)). In its summary judgment decision, this Court observed that "[d]iscretion without procedure leads to arbitrary governance, and eventually, the loss of liberty. That is what the Due Process Clause guards against." ECF 132 at 52.

Here, the IDOC's process for informing Mr. Vinson (and other similarly situated prisoners) of the reasons for denial of their host sites deprives members of the *Murphy* class of due process in at least three ways.[1]

First, the IDOC violates due process by failing to inform prisoners of the basis for a decision to reject a proposed host site with sufficient specificity. A prisoner cannot effectively respond to the IDOC's decision to reject a host site unless he is informed of the specific basis for decision. *See, e.g., Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 623 (7th Cir. 2002) ("the essence of due process is the requirement

---

[1] Evidence suggests that this is not an isolated problem. *See* Ex. 4, September 29, 2020 letter from class member Armanda Gordon stating that her host site was denied on the sole basis that the investigating agent determined it was "not in inmate's best interest."

7

that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it. A hearing has little value if, prior to the proceeding, an individual has no knowledge of the allegations against him.") (internal citations omitted).

Second, the IDOC's practice falls short because the reasons for rejection of a host site are not provided to the prisoner in writing. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) ("Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact. …We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense.") In the absence of written notice, a prisoner doesn't have fair notice of what he must respond to in his appeal.

And third, the IDOC's process falls short because prisoners are not informed of the right to appeal and/or how to appeal rejection of a host site. *See Donahue v. O'Connor*, 387 F. Supp. 129, 131 (E.D. Wis. 1975) ("Without notice of the right to appeal, that right is meaningless, and review of the underlying decisions is forever barred. The principles of due process of law forbid such a result."); *Voss v. Marathon Cty.*, No. 18-cv-540-jdp, 2019 U.S. Dist. LEXIS 188624, at *7 (W.D. Wis. Oct. 31, 2019) (Peterson, J.) ("informing a detainee that a grievance procedure exists is not the same thing as providing a copy of those procedures or informing the detainee of his right to appeal a grievance.")

8

Mr. Vinson's situation clearly demonstrates the inadequacy of the IDOC's process. To begin with, Mr. Vinson was given no written notice that his host site was denied until he affirmatively submitted a written request for information. When IDOC responded to his inquiry (two weeks after the host site was rejected), he was not informed with any specificity of the reasons for the IDOC's denial, and thus he had no notice of what had led IDOC to conclude his home was "unsafe/ unsuitable." Because Mr. Vinson never received a written statement of the IDOC's specific reason for the denial of his host site (*i.e.*, an opinion rendered by Ms. Blaje), he was deprived of any meaningful opportunity to contest this denial.

If Mr. Vinson had been informed of the real basis for the IDOC's denial and given an opportunity to appeal, he would have been able to present several legitimate bases to contest IDOC's decision. For example, at the time the therapist rendered her opinion, Mr. Vinson had not been her patient for more than a year. Mr. Vinson last spoke to Ms. Blaje in September 2019. Ms. Blaje has no first-hand knowledge of Mr. Vinson's adjustment, progress, behavior or psychological state for the past year. Ms. Blaje apparently relied on whatever IDOC told her about Mr. Vinson, which may or may not have been accurate. Mr. Vinson doesn't know what IDOC told Ms. Blaje and had no opportunity to contest the allegations on which she relied. Finally, even if Mr. Vinson wanted to appeal this decision with the very limited information IDOC gave him, he had no way of knowing how to appeal or to whom he could direct such an appeal because IDOC never gave him that information.

A process that fails to inform parolees in writing of the specific reason their host site has been denied necessarily falls short of the dictates of due process because it deprives them of fair notice of the case against him and opportunity to meet it. In addition, the IDOC's process does not satisfy due process because it does not inform the prisoner of the right to seek review of that decision.

### B. The IDOC's Decision to Override the PRB's Determination That Mr. Vinson Did Not Violate His MSR Denies Him Due Process

The second reason the IDOC's decision-making process violates due process is that it amounts to an end-run around the PRB and the procedural protections attendant to a PRB revocation hearing.

It is well established that a person serving a sentence of community supervision (such as probation, parole or MSR) "has a limited liberty interest in his freedom "that cannot be curtailed without the procedural protections of notice and hearing." *Werner v. Wall*, 836 F.3d 751, 760 (7th Cir. 2016) (*citing Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Under Illinois law, MSR revocation decisions are rendered by the Prisoner Review Board. In Mr. Vinson's case, the PRB held a hearing to determine whether he had violated his MSR on September 22, 2020. At that hearing, the IDOC had its opportunity to present whatever evidence it had about Mr. Vinson's alleged parole violations to the PRB; and Mr. Vinson had an opportunity to hear the evidence against him, respond to that evidence, and present evidence of his own. After affording both parties the opportunity to present their cases, the PRB reached a

10

decision that Mr. Vinson had not violated his MSR and was entitled to continue his MSR in the community.

The IDOC decided to ignore that decision and keep Mr. Vinson in prison rather than return him to the compliant host site where he had successfully completed a year of MSR. To justify that decision, it held a secret meeting with a therapist, gave her their one-sided version of events, and then used her opinion as a cover for denying approval of a host site that it had previously deemed compliant with Illinois law and IDOC policy.

Such a decision-making process is in direct contradiction of this Court's admonition in its summary judgment decision that "In Illinois, the PRB—not the IDOC—has the power to revoke a releasee's MSR term for failure to comply with a condition, say, the host-site requirement. Absent a court order or an express statutory authorization to extend the duration of imprisonment beyond the original court-ordered term, then, the defendants are skating on thin ice." ECF 132 at 52.

Put simply, IDOC does not have the power to overrule the PRB. But its manipulation of the host-site approval process amounts to precisely that. It is extremely troubling that—after being under this Court's supervision for a year because of its violation of the constitutional rights of *Murphy* class members—IDOC continues to abuse its power to withhold approval of host sites as an end-run around decisions of the PRB.

11

## IV.     Relief Requested

Having failed to institute proper procedures to protect *Murphy* class members procedural due process rights, the Department of Corrections is in violation of this Court's permanent injunction order. Accordingly, Plaintiffs request that the Court grant the following relief:

(1) Order Director Jeffries or an appropriate designee to testify under oath about the following matters: (a) IDOC process for informing prisoners of the reasons for denial of their proposed host sites and their right to appeal denials; (b) what efforts IDOC has undertaken to properly inform the relevant IDOC employees responsible for the investigation and approval of host sites of this process; and (c) the IDOC's reliance on therapists to deny host sites;

(2) Order the Department of Corrections to provide written notice to all parole agents and other IDOC personnel responsible for review and approval of host sites of their obligation to provide prisoners a written explanation of the specific reasons for denial of a host site and their right to appeal. This written notice should be in a form approved by counsel for Plaintiffs and the Court;

(3) Order the Department of Corrections to provide written notice to all members of the *Murphy* class of their right to a written explanation of the specific reasons for denial of a proposed host site and their right to appeal such denials. This notice should include clear instructions about the process for appealing host site denials and the name of the person or persons to whom appeals can be directed. This written notice should be in a form approved by counsel for Plaintiffs and by the Court;

(4) Order the Department of Corrections to pay Plaintiffs' attorneys reasonable fees for the time and expense incurred to bring this motion.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a rule to show cause why Defendant Jeffries should not be held in contempt of court and grant the relief requested above.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
773-283-3913
mweinberg@sbcglobal.net